557 So.2d 649 (1990)
NORDMARK PRESENTATIONS, INC., a Florida Corporation; Nordmark and Hood Presentations, Inc., a Georgia Corporation Authorized to Do Business in Florida; and Events International, Inc., a Florida Corporation, Appellants,
v.
Daniel J. HARMAN, Appellee.
No. 89-00898.
District Court of Appeal of Florida, Second District.
February 28, 1990.
Stanley E. Marable, Sarasota, for appellants.
S. Craig Kiser, Tallahassee, for appellee.
CAMPBELL, Chief Judge.
Appellants, plaintiffs below, Nordmark Presentations, Inc., Nordmark and Hood *650 Presentations, Inc. and Events International, Inc. (Events), challenge the Sarasota County circuit court order that dismissed their amended complaint and quashed service of process on appellee, defendant below, Daniel J. Harman (Harman), for lack of personal jurisdiction in this action for damages on a noncompete clause in an employment contract.
The posture of this case, as it reaches us in this appeal, together with the recent decision of our supreme court in Venetian Salami Co. v. Parthenais, 554 So.2d 499 (Fla. 1989), requires us to reverse the order of the trial court and remand the case for further limited evidentiary hearings to determine the jurisdiction issue.
Appellants argue that their amended complaint contained sufficient jurisdictional allegations for Florida courts to exercise jurisdiction over Harman under Florida's long-arm statute, section 48.193, Florida Statutes (1987). We agree that the allegations of appellants' amended complaint facially contain sufficient alleged facts to meet the requirements of section 48.193. While Harman filed an affidavit in support of his motion to dismiss based upon the insufficiency of appellants' allegations to comply with section 48.193, the contents of Harman's affidavit do not refute all of the critical factual allegations of appellants' unverified amended complaint. Appellants filed no counter-affidavits.
The pleadings before the court revealed that Events produces and promotes entertainment and fund-raising events in the Eastern United States. Events' recruiter in Sarasota called Harman, then residing in Iowa, to offer him the position of engagement director, a position in which Harman would arrange ice follies, magic shows, circuses and the like on behalf of Events throughout the United States. Harman accepted the offer on the telephone and then traveled to Columbus, Ohio, in April 1986, for a two-week seminar conducted by Events. While at the seminar, Harman signed a written agreement and received an executed copy of same from Events' Florida office.
The April 18, 1986 contract provided that if the contract terminated, Harman would not, for a period of three years, conduct any promotions for sponsors in metropolitan areas where he had previously conducted campaigns for Events. The contract also provided that all ticket sales records were the exclusive property of Events.
After completing the training seminar in Ohio, Harman was assigned briefly to Alabama, and then to Michigan in June of 1986, where he resided and performed his contractual duties until he terminated the contract in June of 1988. After Events learned that Harman was promoting fund-raising events for previous sponsors he had serviced for Events, Events began this action seeking injunctive relief and damages, alleging unfair competition, improper utilization of trade secrets and breach of the April 18, 1986 agreement.
According to Harman's own affidavit, submitted in support of his motion to dismiss, while working for Events, Harman attended three business meetings in Florida: (1) Events' annual meeting in December of 1986  one-and-one-half days; (2) Events' annual meeting in December of 1987  one-and-one-half days; and (3) a meeting in early 1988 with Events  one day. Harman did not engage in any other activities in Florida, nor was he required to do so under the contract. He maintained his own office and staff in Michigan at his own expense and was not permitted to use Events' office equipment, personnel or supplies. However, while Harman was in Michigan, according to the unrefuted allegations of appellants' unverified amended complaint, Events' Sarasota office provided him with proprietary information, trade secrets, managerial training and assistance, and regularly directed and supervised Harman's day-to-day activities. Harman had fixed hours of employment, established duties, assigned geographical territories, and was required to follow procedures established by Events. Harman was required to give standardized presentations to potential sponsors and Events frequently and routinely supervised and directed Harman. In addition, Events assisted Harman in carrying out his assigned duties, in *651 solving problems and in providing technical and practical assistance and support.
The Florida long-arm statute, section 48.193, reads, in pertinent part, as follows:
48.193 ACTS SUBJECTING PERSON TO JURISDICTION OF COURTS OF STATE. (1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself and, if he is a natural person, his personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts: (a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
... .
(g) Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state. (2) A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.
While the unrefuted allegations of appellants' amended complaint contain allegations sufficient, if true, to come within the provisions of section 48.193(1)(a) or section 48.193(2), our inquiry may not stop there. See Venetian Salami, 554 So.2d at 499.
There are two questions that must be answered to determine whether Harman could be haled into court in Florida. Id. The first question is whether the allegations of appellants' amended complaint allege sufficient facts to fall within the scope of section 48.193. While that was the question principally addressed by the parties and the court below, and we have concluded that the factual allegations of the amended complaint on its face are sufficient to comply with section 48.193, it is clear to us that the parties and the trial judge may have confused that issue with the second question of whether the federal constitutional due process requirements of minimum contacts has been met. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). It appears to us, based upon the record before us, that the alleged continuing obligations and contact between Harman and Events, including Harman's attendance at two of Events' annual meetings in Florida, Harman's attendance at one business meeting with Events in Florida, the assignment of work to Harman by Events, the transmission of information from Events to Harman and Events' frequent, specific and direct supervision of Harman's work over a two-year period, were sufficient to show that Harman had sufficient minimum contacts with the State of Florida. Since Harman's affidavit does not directly dispute any of those allegations, they must usually be taken as true. See Electro Engineering Products Co., Inc. v. Lewis, 352 So.2d 862, 864 (Fla. 1977).
However, this order of dismissal was entered by the trial court prior to the supreme court decision in Venetian Salami. Harman was clearly attempting to put the evidentiary burden on appellants to support, by affidavit or otherwise, the allegations of their unverified amended complaint. While Harman's affidavit does not directly contradict all of the essential allegations of appellants' amended complaint, we believe the spirit, if not the clear intent, of Venetian Salami requires a further limited evidentiary hearing to determine the veracity of appellants' allegations to support both a compliance with the requirements of section 48.193, and the federal constitutional due process requirements of "minimum contacts."
We, accordingly, reverse the order dismissing appellant's complaint for lack of jurisdiction and remand for further proceedings consistent with this opinion.
RYDER and PARKER, JJ., concur.