652 So.2d 389 (1995)
J.D. NICHOLS and NTS Corporation, Appellants,
v.
Jeno PAULUCCI and Silver Lakes, I, Inc., a Florida corporation, individually and d/b/a PR Partners, a Florida general partnership, Appellees.
No. 93-2609.
District Court of Appeal of Florida, Fifth District.
February 10, 1995.
Rehearing Denied April 4, 1995.
*390 Richard F. Wall and Robert G. Clements, Hartley & Wall, Orlando, for appellants.
David H. Simmons and Dale T. Gobel, Drage, DeBeaubien, Knight, Simmons, Romano & Neal, Orlando, for appellees.
DIAMANTIS, Judge.
J.D. Nichols (Nichols) and NTS Corporation (NTS) appeal the trial court's non-final order denying their motion to dismiss for lack of personal jurisdiction.[1] After conducting an evidentiary hearing in accordance with Venetian Salami Co. v. Parthenais, 554 So.2d 499 (Fla. 1989), the trial court concluded that it possessed personal jurisdiction over both Nichols and NTS. We agree and, thus, affirm the order under review.
In August 1992, the appellees, Jeno Paulucci and Silver Lakes I, Inc., individually and d/b/a PR Partners, filed a complaint for damages and declaratory relief against Nichols, NTS, NTS/Florida Residential Properties, Inc., Orlando Lake Forest, Inc., and Banc One Mortgage Corporation. The complaint asserted that the court had personal jurisdiction over all named defendants pursuant *391 to Florida's long-arm statute, section 48.193, Florida Statutes (1991).
The complaint stated that PR Partners and NTS/Florida Residential Properties, Inc. (NTS/Residential), a Florida corporation, entered into a joint venture agreement for the purpose of holding and developing real property in Seminole County. Pursuant to an amendment to the joint venture agreement, NTS/Residential assigned its interest in the joint venture to defendant Orlando Lake Forest, Inc. (OLF, Inc.), also a Florida corporation, and the joint venture became known as the OLF joint venture. The complaint alleged that OLF, Inc., was the alter ego of NTS, a Kentucky corporation. Banc One held a mortgage on the OLF joint venture's real property, and Paulucci and Nichols both executed personal guaranties relative thereto in favor of Banc One. In May 1991, NTS, OLF, Inc., and NTS/Residential sent a letter to PR Partners offering to purchase its interest in the OLF joint venture. The complaint alleged that, once fully executed by all relevant parties, the May 1991 letter became a binding sale contract for PR Partners' interest in the OLF joint venture.
The complaint asserted counts for an accounting of the OLF joint venture's financial affairs (Count II) and for dissolution of the OLF joint venture (Count III). Against NTS, NTS/Residential, and OLF, Inc., the complaint asserted a count for breach of the sale contract (Count I). Against Nichols, NTS/Residential, and OLF, Inc., the complaint asserted counts for fraudulent misrepresentation (Count IV), for breach of fiduciary duty (Count V), and for breach of the joint venture agreement (Count VI). Against Nichols, NTS, and OLF, Inc., the complaint asserted a count for breach of the loan agreement or subrogation, and/or foreclosure (Count VIII). Against Banc One, the complaint asserted a count for breach of guaranty and loan documents (Count VII). Finally, the complaint asserted a count for declaratory judgment against all named defendants (Count IX).
In the trial court, the appellees relied upon sections 48.193(1) and (2), Florida Statutes (1991), to support their contention that the trial court possessed jurisdiction over Nichols and NTS. On appeal, however, the appellees rely only upon section 48.193(2).[2] In August 1992, when the appellees filed this action, section 48.193(2) provided:
A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.
§ 48.193(2), Fla. Stat. (1991).
In construing the requirement of "substantial and not isolated activity," Florida courts have harmonized this language with the constitutional due process requirements enunciated in Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). See American Overseas Marine Corp. v. Patterson, 632 So.2d 1124, 1128 (Fla. 1st DCA), rev. denied, 641 So.2d 1346 (Fla. 1994). In Helicopteros, the Supreme Court held that "continuous and systematic general business contacts" were required before a forum could exercise general jurisdiction over a nonresident defendant. Helicopteros, 466 U.S. at 416, 104 S.Ct. at 1873. The Court explained that a state exercises "general", as opposed to "specific", jurisdiction over a defendant when the cause of action does not arise out of, and is not related to, the defendant's contacts with the state. Helicopteros, 466 U.S. at 414 n. 9, 104 S.Ct. at 1872 n. 9. See also White v. Pepsico, Inc., 568 So.2d 886, 888 n. 3 (Fla. 1990). The due process standard of Helicopteros applies in this case because section 48.193(2) requires no causal connection between a plaintiff's claim and the defendant's contacts with the state. See American Overseas Marine Corp. v. Patterson, 632 So.2d at 1127-28.
We shall discuss separately the provisions of section 48.193(2) as applied to Nichols and NTS.

*392 Personal Jurisdiction over Nichols
The record evidence supports the trial court's ruling that Nichols' activities within the state of Florida were sufficient to subject him to the trial court's jurisdiction under section 48.193(2). The undisputed evidence reflected that Nichols was a general partner of several Florida limited partnerships, some of which currently or formerly did business in the state of Florida. Specifically, two of the Florida partnerships, NTS/Sabal Office Limited Partnership and Sabal Point Country Club, Ltd., owned, respectively, an office building and a country club in Seminole County. Nichols also was a general partner of NTS-Properties Plus Associates, Ltd., a Kentucky limited partnership which was registered to do business in Florida and which, in turn, was a general partner of NTS-Properties Plus Ltd., a Florida limited partnership which owned, developed, and leased commercial properties in Florida. Additionally, Nichols was a general partner of NTS-Properties Associates V, Ltd., a Kentucky limited partnership which, in turn, was a general partner of NTS-Properties V, a Maryland limited partnership. NTS-Properties V also was registered to do business in Florida, and it owned, developed, and leased commercial properties in Florida. Finally, Nichols was a general partner of NTS-Properties Associates IV, Ltd., a Kentucky limited partnership which owned an interest in an apartment complex in Seminole County.
At the hearing conducted on the motion to dismiss, Nichols testified that he was not actively involved in the operation or management of the partnerships. According to Nichols, his involvement was limited to signing documents. Despite Nichols' efforts to distance himself from his partnerships' activities within the state of Florida, it was proper for the trial court to consider these activities in determining that Nichols had continuous and systematic general business contacts in Florida. Florida courts have recognized that, because a limited partnership gains its identity from its general partners, the limited partnership's contacts with a particular forum may be attributed to the general partners. Kelly v. Department of Insurance, 597 So.2d 900 (Fla. 3d DCA 1992); Levinson v. Brosche, 578 So.2d 477 (Fla. 4th DCA 1991).[3]See also Vespe Contracting Co. v. Anvan Corp., 433 F. Supp. 1226 (E.D.Pa. 1977) (recognizing that same principle applies where defendant is general partner of limited partnership which, in turn, is general partner of limited partnership with contacts with state).
In addition to these partnership activities, Nichols acknowledged at the hearing that he spent an average of two days per year in Florida in connection with the partnerships' business. Finally, with regard to the subject matter of this lawsuit, Nichols acknowledged that he signed a personal guaranty in favor of Banc One relative to the mortgage which the bank held on the OLF joint venture's real property.[4]
We recognize that, standing alone, any one of Nichols' contacts with the state of Florida might not constitute substantial activity within the meaning of section 48.193(2).[5] When viewed in its entirety, however, *393 the evidence presented in this case supports the trial court's ruling that it possessed personal jurisdiction over Nichols.[6]

Personal Jurisdiction over NTS
In Qualley v. International Air Service Co., 595 So.2d 194 (Fla. 3d DCA), cause dismissed, 605 So.2d 1265 (Fla. 1992), the court discussed when a nonresident parent corporation is subject to personal jurisdiction in Florida:
[T]he presence of a subsidiary corporation within Florida is not enough, without more, to subject a non-Florida parent corporation to long-arm jurisdiction within this state... . The rule is otherwise where, for example, the alter ego test can be met, ... or where the non-Florida parent company independently satisfies the test for jurisdiction under Florida's long-arm statutes, ... .
Qualley, 595 So.2d at 196 (citations omitted).
The evidence in this case fails to support the theory that NTS is the alter ego of defendants NTS/Residential or OLF, Inc.,[7] because, although the appellees asserted this theory in their complaint, they failed to claim at the evidentiary hearing or on appeal that NTS, NTS/Residential, or OLF, Inc., was formed for an improper purpose. Cf. Woods v. Jorgensen, 522 So.2d 935, 937 (Fla. 1st DCA 1988).
Based on the record evidence, however, we conclude that the trial court properly ruled that it had acquired personal jurisdiction over NTS under section 48.193(2). Even if NTS technically was not the parent corporation of defendants NTS/Residential or OLF, Inc., through any ownership interest therein, NTS is subject to the personal jurisdiction of the courts of this state because of the extent of NTS's contacts with the OLF joint venture, as well as the degree of control NTS exercised over NTS/Residential and OLF, Inc. See Universal Caribbean Establishment v. Bard, 543 So.2d 447 (Fla. 4th DCA 1989). See also Richard Bertram & Co. v. American Marine, Ltd., 258 So.2d 335 (Fla. 3d DCA 1972).
The evidence showed that NTS was engaged in the following activities in Florida: NTS was a guarantor on the OLF joint venture's $13 million loan held by Banc One; NTS's consolidated accounting system performed accounting services for defendants NTS/Residential and OLF, Inc.; under this system, NTS issued checks to cover expenses related to the OLF joint venture, including travel expenses and legal fees; NTS then billed the OLF joint venture for legal fees paid on its behalf; NTS also billed the OLF joint venture and OLF, Inc., for management services provided by NTS; NTS's decorator/architect traveled to Florida and performed services for the OLF joint venture (for which NTS later billed the joint venture), as well as for other Florida partnerships; NTS issued invoices and purchases orders relative to the OLF joint venture; NTS was listed as the customer on the Florida Power & Light account for the OLF joint venture; correspondence relative to the OLF joint venture was addressed to Paulucci on NTS letterhead; NTS also issued checks on behalf of Nichols' partnerships in Florida, and NTS charged the partnerships for expenses and services incurred on their behalf; some NTS officers and directors also were officers and directors of NTS/Residential and OLF, Inc.; NTS's president and chief operating officer monitored the developments and projects of OLF, Inc., from his office in *394 Louisville on almost a daily basis, and he visited NTS entities in Florida on a monthly basis; and Nichols visited NTS entities in Florida on an annual basis, and he exercised ultimate control over the NTS entities.
Accordingly, the trial court properly ruled that it had acquired personal jurisdiction over NTS based on NTS's substantial activities within the state of Florida.[8]See Universal Caribbean, 543 So.2d at 448. Cf. Qualley v. International Air Service Co., 595 So.2d 194 (Fla. 3d DCA) (California parent company's mere performance of accounting and payroll functions for subsidiary doing business in Miami was insufficient activity to subject parent company to jurisdiction under section 48.193), cause dismissed, 605 So.2d 1265 (Fla. 1992).
AFFIRMED.
PETERSON and GRIFFIN, JJ., concur.
NOTES
[1] Appellate review of this order is proper pursuant to rule 9.130(a)(3)(C)(i) of the Florida Rules of Appellate Procedure.
[2] The appellees apparently concede that Nichols and NTS are not subject to the trial court's jurisdiction under any of the provisions of section 48.193(1).
[3] Although we conclude that a limited partnership's contacts may be considered in determining whether a nonresident general partner has engaged in substantial activities within the state, we reject the appellees' suggestion that a nonresident's mere status as a general partner in a Florida limited partnership necessarily subjects the nonresident to the general jurisdiction of the courts of this state under section 48.193(2). In contrast, where the cause of action arises out of the limited partnership's active conduct of business in Florida, the nonresident general partner will be subject to the specific jurisdiction of Florida's courts under section 48.193(1). See In re Estate of Vernon, 609 So.2d 128 (Fla. 4th DCA 1992); Renda v. Peoples Federal Savings & Loan Ass'n, 538 So.2d 860 (Fla. 1st DCA 1988), rev. denied, 542 So.2d 1334 (Fla. 1989). This rule does not apply to a limited partner, whose interest in the limited partnership is more analogous to that of a stockholder in a corporation, id. at 863, or that of a corporate officer and director. Klein v. Mega Trading, Ltd., ex rel. Hochman, 416 So.2d 866 (Fla. 3d DCA 1982).
[4] Although the evidence at the hearing focused on Nichols' business contacts with the state of Florida, Nichols' pre-hearing affidavit also revealed that he formerly owned a vacation home in Palm Beach County which he occasionally visited and which he sold in March 1992.
[5] By itself, ownership of property is insufficient to subject a nonresident defendant to the jurisdiction of the courts of this state, unless the cause of action arose out of such ownership. See 48.193(1)(c), Fla. Stat. (1991). Further, the mere execution of a guaranty generally is insufficient to subject a nonresident defendant to the jurisdiction of a Florida court. See Holton v. Prosperity Bank, 602 So.2d 659, 662-63 (Fla. 5th DCA 1992). See also Pluess-Staufer Industries v. Rollason Engineering & Manufacturing, Inc., 635 So.2d 1070, 1073 n. 10 (Fla. 5th DCA 1994). Cf. Hamilton v. Business Assistance Consortium, Inc., 602 So.2d 619 (Fla. 3d DCA 1992).
[6] In reaching this conclusion, we did not consider any activities Nichols performed as an officer or director of the different NTS corporations, including NTS, NTS/Residential, and OLF, Inc. See Doe v. Thompson, 620 So.2d 1004 (Fla. 1993) (recognizing distinction between corporate officer acting on behalf of himself and corporate officer acting on behalf of his corporation). Accord Eller v. Allen, 623 So.2d 545 (Fla. 5th DCA 1993), rev. denied, 634 So.2d 622 (Fla. 1994).
[7] See Dania Jai-Alai Palace, Inc. v. Sykes, 450 So.2d 1114, 1120-21 (Fla. 1984).
[8] We reject the contention that the trial court erred in conducting a full Venetian Salami evidentiary hearing at which the court permitted the appellees to present evidence on the broad jurisdictional issue of whether NTS's and Nichols' activities within the state of Florida were sufficient to subject them to the trial court's jurisdiction. Nichols and NTS argue that this was error because the trial court earlier had entered an order limiting the hearing's jurisdictional issue to that of whether a general partner who registered to do business in Florida thereby subjected himself to the personal jurisdiction of the courts of this state. We conclude that, by failing to move for a continuance at the hearing, NTS and Nichols waived the right to claim that they were prejudiced by the trial court's ruling admitting the additional evidence. See Batista v. Walter & Bernstein, P.A., 378 So.2d 1321 (Fla. 3d DCA 1980). See also Leviton v. Philly Steak-Out, Inc., 533 So.2d 905 (Fla. 3d DCA 1988). We also note that NTS's and Nichols' claim of procedural prejudice is weakened by their decision on appeal to request an outright reversal of the trial court's ruling rather than a remand for a new evidentiary hearing at which they might present additional evidence relevant to the dispositive issues in this case.