739 So.2d 617 (1999)
Francis WOODS and Jacqueline Woods, his wife, Appellants,
v.
NOVA COMPANIES BELIZE LTD., a foreign corporation, Appellee.
No. 97-0492.
District Court of Appeal of Florida, Fourth District.
June 2, 1999.
Rehearing Denied October 5, 1999.
*619 Joel S. Perwin of Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin, P.A., Miami, and Haggard & Parks, P.A., Coral Gables, for appellants.
Carlos M. Sires and Steven R. Weinstein of Kirkpatrick & Lockhart LLP, Miami, for appellee.
PARIENTE, BARBARA J., Associate Judge.
Appellants, Francis and Jacqueline Woods (plaintiffs), appeal the trial court's dismissal of their negligence action based on lack of personal jurisdiction and forum non conveniens. For the reasons stated in this opinion, we reverse.

I. FACTS

Francis Woods, a resident of Belize,[1] was injured in an aircraft accident in Costa Rica in 1994 while a passenger on an aircraft owned by appellee, Nova Companies Belize, Ltd. (defendant). He sustained multiple serious injuries, including burns to 65% of his body. Francis and his wife Jacqueline brought suit against defendant in Broward County Circuit Court, seeking recovery for damages resulting from Francis's injuries.
Defendant is a Belizean corporation[2] engaged in the business of shrimp farming. Beginning in late 1991, defendant began to export its shrimp to the United States. Eighteen percent of its worldwide shrimp sales are made to Florida importers, and ninety percent of its total shrimp sales are to the United States, with almost one hundred percent of its shipments traveling through Florida either by air or by boat. Defendant has utilized the services of a Florida broker to arrange for customs and FDA approval of the shrimp shipments, has purchased containers from Florida through a corporation which brings them to Belize for defendant's use, has utilized storage facilities in Florida when necessary, and has purchased a variety of equipment and supplies from Florida sellers for its use in Belize. Defendant, however, does not own property in Florida, is not registered to do business in Florida, has never advertised to do business in Florida, and does not maintain a mailing address, telephone listing or bank account in Florida.

II. PERSONAL JURISDICTION

The trial court dismissed the plaintiffs' complaint for lack of personal jurisdiction, as well as on grounds of forum non conveniens. Generally, when performing a jurisdictional analysis pursuant to a longarm statute, Florida courts must engage in a two-part analysis. See Venetian Salami Co. v. Parthenais, 554 So.2d 499, 502 (Fla. 1989). The court must first determine whether the party has alleged facts sufficient to fall within the scope of Florida's *620 long arm statute, section 48.193, and if so, whether the federal constitutional due process requirements of minimum contacts have been met. See id.
When seeking to establish jurisdiction over a nonresident defendant, the plaintiff need only plead "the basis for service in the language of the statute without pleading the supporting facts." Id. at 502. Filing a motion to dismiss merely raises the legal sufficiency of the pleadings. To contest jurisdiction, a defendant must file affidavits in support of his position. The burden is then placed on the plaintiff to prove by affidavit the basis for jurisdiction. See id. at 502-503. "In most cases, the affidavits can be harmonized, and the court will be in a position to make a decision based upon facts which are essentially undisputed." Id. at 503.
The trial court's conclusory order dismissing the case contains no factual findings on the jurisdictional issue. The record before the trial court in this case consisted of affidavits, discovery documents and deposition testimony in support of the parties' respective positions. The trial court did not hold an evidentiary hearing to consider live testimony where credibility was an issue. Therefore, the trial court occupied no better position than this Court to resolve the issue of whether personal jurisdiction exists under Florida's long arm statute and whether minimum contacts are satisfied. Cf. Ciba-Geigy Ltd. v. The Fish Peddler, Inc., 691 So.2d 1111, 1118 (Fla. 4th DCA), review denied, 699 So.2d 1372 (Fla.1997).
Plaintiffs assert that the trial court had personal jurisdiction over defendant based on the general jurisdiction statute, section 48.193(2), Florida Statutes (1995), which provides:
A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

(Emphasis supplied.) The general jurisdiction statute does not require connexity between a defendant's activities and the cause of action. See Helicopteros Nacionales de Colombia S.A. v. Hall, 466 U.S. 408, 416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); Universal Caribbean Establishment v. Bard, 543 So.2d 447, 448 (Fla. 4th DCA 1989); Nichols v. Paulucci, 652 So.2d 389, 391 (Fla. 5th DCA 1995); American Overseas Marine Corp. v. Patterson, 632 So.2d 1124, 1128 (Fla. 1st DCA 1994).
"Substantial and not isolated activity" has been found to mean "continuous and systematic general business contact" with Florida. See Achievers Unlimited, Inc. v. Nutri Herb, Inc., 710 So.2d 716, 720 (Fla. 4th DCA 1998) (quoting American Overseas, 632 So.2d at 1128). This "continuous and systematic" contacts standard was the standard enunciated by the Supreme Court in Helicopteros as sufficient to fulfill the due process requirements of minimum contacts when asserting general jurisdiction. 466 U.S. at 415, 104 S.Ct. 1868. Because section 48.193(2) requires this high threshold, if the defendant's activities meet the requirements of section 48.193(2), minimum contacts is also satisfied. See Universal Caribbean, 543 So.2d at 448; Nichols, 652 So.2d at 391; American Overseas, 632 So.2d at 1127-28; see also Venetian Salami, 554 So.2d at 502 (recognizing that some bases of jurisdiction found in section 48.193 would satisfy minimum contacts concerns).
The record demonstrates that defendant engaged in continuous and systematic business activities with Florida and derived great pecuniary benefit from its transactions here. By selling approximately eighteen percent of its product to Florida importers, moving nearly all of its product through the state, purchasing equipment and supplies from Florida suppliers, utilizing storage facilities in Florida, and establishing essential business relationships in this state, all within its ongoing *621 commercial relationship with Florida, defendant "engaged in substantial and not isolated activity within the state" as is required to establish general jurisdiction pursuant to section 48.193(2). See Achievers, 710 So.2d at 720; Pafco Gen'l Ins. Co. v. Wah-Wai Furniture Co., 701 So.2d 902, 903-04 (Fla. 3d DCA 1997).
Although defendant maintains that some of these business contacts took place after the accident in this case, that fact is not dispositive. "[C]ontacts are commonly assessed over a period of years prior to the plaintiffs filing of the complaint." Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 569 (2d Cir.1996); see also Helicopteros, 466 U.S. at 409-411, 104 S.Ct. 1868 (examining contacts over a seven-year-period, up to the time the lawsuit was filed).
The activities cannot be described as either haphazard or fortuitous. See, e.g., Rafal v. Mesick, 661 So.2d 79, 81 (Fla. 2d DCA 1995); American Overseas, 632 So.2d at 1130; Price v. Point Marine, Inc., 610 So.2d 1339, 1341-42 (Fla. 1st DCA 1992). While any one of these activities alone may not be deemed sufficient, considered collectively, they establish personal jurisdiction. See Nichols, 652 So.2d at 392-93.
Based on the foregoing, we conclude that the trial court erred in not finding personal jurisdiction over defendant pursuant to section 48.193(2). Thus, the constitutional requirements of minimum contacts have been satisfied.

III. Forum Non Conveniens

Having determined that personal jurisdiction exists, we next address the question of forum non conveniens. "Forum non conveniens is a common law doctrine addressing the problem that arises when a local court technically has jurisdiction over a suit but the cause of action may be fairly and more conveniently litigated elsewhere." Kinney Sys. Inc. v. Continental Ins. Co., 674 So.2d 86, 87 (Fla.1996) (emphasis supplied) (footnote omitted).
The trial court's decision to grant or deny a motion to dismiss on grounds of forum non conveniens is subject to an abuse of discretion standard of review. See Fla. R. Civ. P. 1.061(a). However, where, as here, the trial court's decision is not based on live testimony, "[t]he presumption of correctness given to a trial court's rulings ... is lessened, because the appellate court has everything the trial court had before it." Ciba-Geigy, 691 So.2d at 1118.
In Kinney, the Florida Supreme Court adopted the federal four-part analysis for forum non conveniens:
As a prerequisite, the court must establish whether an adequate alternative forum exists which possesses jurisdiction over the whole case. [2] Next, the trial judge must consider all relevant factors of private interest, weighing in the balance a strong presumption against disturbing plaintiffs' initial forum choice.[3] [3] If the trial judge finds this balance of private interests in equipoise or near equipoise, he must then determine whether or not factors of public interest tip the balance in favor of a trial in [another] forum. [4] If he decides that the balance favors such a ... forum, the trial judge must finally ensure that plaintiffs can reinstate their suit in the alternative forum without undue inconvenience or prejudice.
674 So.2d at 90 (quoting Pain v. United Technologies Corp., 637 F.2d 775, 784-85 (D.C.Cir.1980)) (brackets in original). The goal of adopting this analysis was to provide a "well-defined method of balancing the often competing interests." Kinney, 674 So.2d at 90. The defendant bears the burden of persuasion as to each of the four Kinney steps. See Carenza v. Sun Int'l Hotels, Ltd., 699 So.2d 830, 832 (Fla. 4th *622 DCA 1997); Camejo v. Ocean Drilling & Exploration, 838 F.2d 1374, 1379 (5th Cir. 1988).
We turn now to the first factor to consider whether an adequate alternative forum exists "which possesses jurisdiction over the whole case." Kinney, 674 So.2d at 90. The affidavits submitted by defendant provide that service can be perfected; that both countries' courts could exercise jurisdiction over the present case; and that both countries recognize a cause of action for resolution of the present case. Moreover, defendant has agreed to submit to the jurisdiction of the courts of both Costa Rica and Belize. Plaintiffs did not contest or rebut these affidavits. Thus, we must assume that the first prong of Kinney has been satisfied.
The second Kinney prong requires a balancing of the private interests of the parties. The factors examined in the second prong include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." Kinney, 674 So.2d at 89 (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), overruled by statute on other grounds as recognized in American Dredging Co. v. Miller, 510 U.S. 443, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994)).
According to Kinney, the term "private interests" encompasses "four broad `practical' concerns: adequate access to evidence and relevant sites, adequate access to witnesses, adequate enforcement of judgments, and the practicalities and expenses associated with the litigation." 674 So.2d at 91. The private-interest factor does not require that the alternative forum be a "better" choice, but "[o]n balance, it must neither disadvantage nor advantage either party." Ciba-Geigy, 691 So.2d at 1119.
In this case, although the plane crash occurred in Costa Rica, the affidavit of plaintiffs' expert states that "the sole and exclusive cause of the accident was pilot error." Because Francis Woods was a passenger in an aircraft that was owned by defendant and flown by a pilot who was an agent of defendant, there is nothing in this record that would indicate that there is any significant question of liability.
On the other hand, according to the record evidence, the majority of Woods' medical treatment occurred in the United States with a substantial amount of treatment taking place in Florida. Cf. Magnin v. Teledyne Continental Motors, 91 F.3d 1424, 1430 (11th Cir.1996). Thus, the record establishes that the majority of the damage testimony and evidence would involve witnesses located in Florida and other states within this country. Therefore, although plaintiffs are residents of Belize, because a portion of Wood's medical treatment was in Florida, their choice of Florida as a forum for filing this lawsuit is clearly a reasonable one. Cf. Ciba-Geigy, 691 So.2d at 1118.
In addition, Costa Rica does not even recognize a general power of pre-trial deposition of non-parties, so there is a question regarding whether United States law would permit depositions in the United States if the action were transferred to Costa Rica. See Lo Ka Chun v. Lo To, 858 F.2d 1564, 1566 (11th Cir.1988); compare Value Rent-A-Car, 720 So.2d at 555 (plaintiff received medical treatment in alternate forum, and there was no issue of whether witnesses could be deposed regarding damages); Brunschwig v. Simpson, 711 So.2d 255 (Fla. 3d DCA 1998) (medical care and all witnesses located in alternate forum).
Costa Rica, one of the alternate forums, has no connection with this lawsuit other than the haphazard circumstance that the airplane crashed there during a flight between Costa Rica and Belize. While it is *623 true that defendant's business is in Belize, and plaintiffs reside there, those facts alone do not make Belize a preferable alternate forum. In this case, defendant's general representation that "[a]ll evidence relevant to the airplane accident is located in Belize and Costa Rica" is insufficient to support the trial court's conclusory findings that either alternate forum will provide greater access to relevant evidence and sites; that the alternate forums will provide greater access to, and compulsory process over, witnesses; and that the practicalities and expenses associated with this litigation warrant dismissal in favor of the alternate forums.
Dismissing this lawsuit in order to require plaintiffs to litigate in either Belize or Costa Rica would on balance significantly disadvantage plaintiffs. See Ciba-Geigy, 691 So.2d at 1119. On the other hand, litigating this case in Florida would not significantly disadvantage defendant. Only "[i]f the relative conveniences and inconveniences to the parties are `at or near equipoise'" does the court proceed to the third and fourth prongs. Id. at 1118; see also Kinney, 674 So.2d at 90.[4] In this case, the trial court erred in finding that the private interests favor the alternate forums.
We therefore conclude that the defendant did not meet its burden of persuasion, that the record does not support the trial court's conclusory findings, and that the dismissal of this action in the forum chosen by plaintiffs constitutes an abuse of discretion. Accordingly, the trial court's order dismissing the plaintiff's complaint is reversed, and the case is remanded to the trial court for further proceedings.
STEVENSON, J., concurs.
MARRA, KENNETH A., Associate Judge, dissents with opinion.
MARRA, KENNETH A., Associate Judge, dissenting.
Because I believe the trial court did not abuse its discretion in dismissing this case on the grounds of forum non conveniens, I respectfully dissent.
All of the parties to this lawsuit are domiciled in Belize. The plaintiff, Francis Woods, was injured in an aircraft accident in Costa Rica while attempting to return to Belize. The airplane involved in the accident was owned by the defendant. The defendant has sufficient minimum contacts with the state of Florida to justify the trial court exercising personal jurisdiction over it. The only contact that the injured plaintiff has with Florida is his receipt of medical treatment required as a result of the accident. The plaintiff initially spent seven (7) months receiving medical treatment in the hospital at the University of Alabama at Birmingham before coming to Florida for additional medical care.
The defendant moved the trial court to dismiss the case pursuant to Florida Rule of Civil Procedure 1.061(a). This rule sets forth a four (4) step analysis for trial courts to consider when determining whether a case filed in a Florida court should be dismissed because it is an inconvenient forum. The rule expressly provides that "[t]he decision to grant or deny the motion for dismissal rests in the sound discretion of the trial court, subject to review for abuse of discretion." (emphasis added). As this Court has stated, the term abuse of discretion "does not encompass unwise or mistaken decisions so long as there are grounds on which the decision could be made. Abuse of discretion arises when there is no conceivable basis for the *624 decision." Hasam Realty Corp. v. City of Hallandale, 393 So.2d 561, 563 (Fla. 4th DCA 1981) (citation omitted).
The backdrop against which cases involving Rule 1.061(a) should be analyzed is the Florida Supreme Court's decision in Kinney System, Inc. v. Continental Insurance Co., 674 So.2d 86 (Fla.1996). In Kinney, the Court recognized that the 4-step analysis, which is now embodied in Rule 1.061(a), would "limit the ability of some persons to take advantage of Florida's judicial system." Id. at 92. The Court also stated that although the Florida Constitution guaranteed every person access to Florida's courts for redress of injuries, "that right has never been understood as a limitless warrant to bring the world's litigation here," and the Constitutional guarantee of access was not "to provide a forum to the world at large." Id. at 92-93. The Court further noted that the Florida judiciary was not created to police activities in other parts of the world, but rather it exists to "judge matters with significant impact upon Florida's interests, especially in light of the fact that the taxpayers of this state pay for the operation of its judiciary. Nothing in our Constitution compels the taxpayers to spend their money even for the rankest forum shopping by out-of-state interests." Id. at 93.
I fail to see how this case has a significant impact upon a Florida interest. All of the parties reside in Belize. The alleged tortious act occurred in Costa Rica. Although the defendant has sufficient contacts with Florida to justify the exercise of personal jurisdiction over it, the alleged tortious act, the negligent operation of an aircraft, has no bearing on the activities in which the defendant is engaged in this state. Thus, permitting this case to go forward in Florida will not directly or indirectly serve to protect the citizens of this state from similar tortious conduct by the defendant in the future. The mere fact that the plaintiff sought the benefit of Florida's health care system, and as a result evidence relating to his damages is located here, is insufficient in my view to create a significant impact on a Florida interest.
Moreover, it is apparent that but for the plaintiffs medical treatment in Florida, there would be no basis to have initiated this case here. Thus, this decision does not turn on the tort's impact on a Florida interest, but rather on the financial means of a non-Florida injured party and his decision to seek medical treatment here. As a result, this decision will be an open invitation to non-Florida residents who are injured outside this state by non-Florida tortfeasors to seek medical treatment here, thereby creating the factors which tip the balance in the analysis under Rule 1.061(a) in their favor.
Furthermore, this decision results in the disparate treatment of equally wronged non-Florida residents injured outside of this state by non-Florida defendants, who do not have the financial means to seek medical treatment here. The majority decision gives those with the financial means to come to this state for medical treatment the ability to make use of the apparently more desirable Florida judicial system, while those with less financial means will be relegated to seeking redress in the less desirable foreign forum. I see no reason why two non-Florida residents injured outside of this state in the same way by the same non-Florida defendant should have different rights to access Florida courts because of their economic ability to come to Florida for medical treatment. Under very similar facts where the plaintiffs only connection to this state was the receipt of medical treatment, the court in Resorts International v. Spinola, 705 So.2d 629 (Fla. 3d DCA), rev. denied, 718 So.2d 170 (Fla.1998), recognized that "Florida has no interest in this out-of-country accident." Additionally, the court in Turner v. Koren, 717 So.2d 119, 120 (Fla. 3d DCA 1998), noted that:
Florida has no interest in committing its judicial time and resources to the litigation of this action which calls for the *625 application of foreign law in relation to a[n out-of-country] vehicle accident wherein a non-Florida resident was injured by the negligence of a non-Florida resident [who was driving] a vehicle ... [that was] leased [outside of Florida].
(quoting Ryder Truck Rental, Inc. v. Rosenberger, 699 So.2d 713, 717 (Fla. 3d DCA 1997), rev. denied, 705 So.2d 570 (Fla. 1998)). The statements from these decisions are applicable here.
I also take issue with the majority's analysis of the factors to be considered under Rule 1.061(a). In its analysis of the factor of private interests, and more particularly, the practical concern involving adequate access to evidence and witnesses, the majority places great reliance upon its assumption that there is no significant question of liability. The majority's conclusion is based upon an affidavit of the plaintiffs' expert stating that the sole and exclusive cause of the accident was pilot error. A review of the record, however, reveals that the affidavit was filed by the plaintiffs on the same day as the hearing on the motion to dismiss. Moreover, during the course of the hearing, the plaintiffs' counsel specifically stated to the trial court that "we don't ask the court to make a liability ruling now." Because the defendant received the plaintiffs' written response to the motion to dismiss, including the expert's affidavit, shortly before the hearing, the defendant requested an opportunity to file a reply. The trial court permitted the defendant to file a reply memorandum to the plaintiff's late-filed response, but the court specifically prohibited the defendant from submitting new affidavits which would have allowed it to controvert the affidavit of the plaintiffs' expert. In its reply memorandum of law, defendant expressly contested liability. Due to the late filing of the affidavit of plaintiffs' expert, the limitation on filing new affidavits placed upon the defendant, and the plaintiffs' express request that the trial court not make a ruling on liability, I cannot conclude that there is no significant question of liability. As the court in Magnin v. Teledyne Continental Motors, 91 F.3d 1424, 1430 n. 2 (11th Cir.1996) stated under similar circumstances:
Magnin argues that many of the French witnesses will be unnecessary, because, he contends, the French accident reports and other evidence will establish his averments that engine failure caused the crash. Of course, the cause of the crash has not yet been conceded, nor has it been established in any court of law. If we were to operate on the assumption that all of Magnin's averments are true, then there would be little or no need for a trial anywhere.
Moreover, with respect to the ability of the plaintiffs to obtain necessary medical evidence to present to a court in either of the other potential fora, defendant presented sworn testimony from two (2) law professors as to the adequacy of their systems. In Belize, it was attested that there is provision for examination of witnesses abroad through a consular officer. As to Costa Rica, a witness in the United States could voluntarily appear before a Costa Rican consular to have his or her deposition taken for use in litigation in that country. Additionally, under the Inter-American Convention on Letters Rogatory, a treaty obligation exists for member countries to require the execution of letters rogatory. Thus, means are available to the plaintiffs to obtain the necessary medical evidence from Florida to present to the courts of those jurisdictions.
In view of all the foregoing, I conclude that there was a substantial basis for the trial court's decision, and therefore the trial court did not abuse its discretion in dismissing this case under Rule 1.061(a). See Hasam Realty Corp., 393 So.2d at 563. As a result, I would affirm.
NOTES
[1] Although plaintiffs assert that Francis Woods is an American citizen, at his deposition he testified that he had resided in Belize for his entire life. The assertion of citizenship is not substantiated, nor refuted, in the record on appeal. The fact was mentioned only during arguments on the motion to dismiss and in a footnote in plaintiffs' initial brief. In any event, plaintiffs are not residents of Florida.
[2] The vast majority of stock is owned by individuals who reside in Virginia.
[3] In this case, because plaintiffs are residents of Belize, they are not entitled to that presumption. See Ciba-Geigy, Ltd. v. The Fish Peddler, Inc., 691 So.2d 1111, 1118 (Fla. 4th DCA), review denied, 699 So.2d 1372 (Fla. 1997).
[4] Where the trial court finds that the balance of private interests is in equipoise or near equipoise, the third prong requires the trial court to determine whether factors of public interest tip the balance in favor of trial in another forum. See Kinney Sys. Inc. v. Continental Ins. Co., 674 So.2d 86, 90-91 (Fla. 1996). If the court decides that the balance favors such a forum, before dismissing the suit the fourth prong requires the trial judge to ensure that plaintiffs can reinstate their suit in that forum without undue inconvenience or prejudice. See id.