37 So.3d 315 (2010)
Gioria Y. SINGER, a/k/a Gary Singer, Appellant,
v.
UNIBILT DEVELOPMENT COMPANY, et al., Appellees.
No. 5D08-4502.
District Court of Appeal of Florida, Fifth District.
April 23, 2010.
*317 David H. Simmons of de Beaubien, Knight, Simmons, Mantzaris & Neal, LLP, Orlando, and Bart R. Valdes of de Beaubien, Knight, Simmons, Mantzaris & Neal, LLP, Tampa, for Appellant.
Katherine E. Giddings and Mark D. Schellhase of Akerman Senterfitt, Tallahassee, and Michael P. McMahon and Samual A. Miller of Akerman Senterfitt, Orlando, for Appellees.
LAMBERT, B.D., Associate Judge.
Gioria Y. Singer (Singer) has timely appealed the trial courts final order dismissing his two-count Amended Complaint for lack of personal jurisdiction and directing that Singer may pursue his claims against the appellees in the state of Michigan or such other forum state having in personam jurisdiction where venue is proper. As Count I was dismissed pursuant to a contractual venue provision, this presents a question of law for which the standard of review is de novo. Fuller v. Dura-Stress Underground, Inc., 939 So.2d 143, 144 (Fla. 5th DCA 2006). Count II was dismissed based upon the trial court's finding that the appellees did not have sufficient minimum contacts to justify general in personam jurisdiction pursuant to the statute.[1] Our standard of review on a motion to dismiss for lack of personal jurisdiction over a foreign corporation is also de novo. Clement v. Lipson, 999 So.2d 1072, 1074 (Fla. 5th DCA 2008).

*318 BACKGROUND
The appellees, Unibilt Development Company (Unibilt), Williamsburg Developers Limited Partnership (Williamsburg Developers), Williamsburg-Biltmore, Inc. (Biltmore), and Williamsburg-Zlotoff, Inc. (Zlotoff) are either Michigan corporations or, as to Williamsburg Developers, a Michigan limited partnership. Biltmore and Zlotoff are general partners of Williamsburg Developers. Unibilt was the company that developed and managed the Williamsburg Developers properties. Singer was the president of Unibilt from the 1980s until 2000. Singer was also a limited partner of Williamsburg Developers, holding a 12.1875% share.
In 2000, Unibilt terminated Singer from employment. Singer sued the four appellees and their various partners in the Orange County Circuit Court. The parties settled this case, memorializing the terms of their settlement in a written Settlement Agreement and Mutual Release (Settlement Agreement). A voluntary dismissal with prejudice was thereafter entered.

THE PRESENT CASE
The genesis of the present case was Singers belief that he did not receive his appropriate share of profits or distribution from the appellees after the sale of certain real property owned by Williamsburg Commercial Limited Partnership[2] located in Orange County, Florida. To resolve his concerns, Singer filed a First Amended Complaint against Unibilt, Williamsburg Developers, Biltmore, and Zlotoff. In Count I, Singer alleged that Unibilt breached the aforementioned Settlement Agreement. In Count II, Singer alleged that the other three appellees breached their Partnership Agreement with Singer.
The appellees each made a special appearance in this case contesting jurisdiction by way of motions to dismiss. Affidavits were filed in support of and in opposition to the motion. After a hearing, the trial court issued an order granting in part the appellees' motion to dismiss Singer's First Amended Complaint. The court concluded that the allegations in Count I arose out of Singers status as a shareholder of Unibilt, and therefore, the venue selection provision of the Settlement Agreement mandated that such litigation occur in Michigan. As to Count II, the court determined that there was insufficient evidence that the three remaining appellees were conducting business in the state of Florida when suit was filed, as they had stopped doing business in the state in March 2006, fifteen months before suit was filed, when the real property described in the First Amended Complaint was sold. As such, the trial court found that the appellees did not have sufficient contacts with the state of Florida to justify general in personam jurisdiction pursuant to the statute.[3] We agree with the trial court's ruling as to both counts and affirm.

Count IBreach of Settlement Agreement
In the Settlement Agreement resolving the earlier litigation, Singer and the appellees contracted for various benefits to Singer, including a 25% share in Unibilt *319 stock. The pertinent, unambiguous terms of that agreement read as follows:
2. As consideration for this agreement, no later than 5:00 p.m., on August 6, 2004, Unibilt shall deliver to Singer such number of shares of Unibilt stock as shall constitute twenty-five percent (25%) of Unibilts then outstanding shares (the stock). The stock shall be delivered to Singer free and clear of any and all liens, claims and encumbrances and shall not thereafter be subject to any dilution. On July 29, 2004, counsel for Unibilt provided Singer with a copy of its most recent financial statement. Upon Singers receipt of the stock, he shall have all rights as a Unibilts shareholder including, but not limited to, the right and ability to inspect Unibilts corporate books and records upon providing Unibilt with reasonable notice of his intent to conduct an inspection....
3. Singer agrees that his receipt of the stock is subject to the following terms and restrictions, (a) Singers status as a shareholder shall not entitle him to assert any shareholder claims or actions on behalf of himself or Unibilt for any events occurring prior to July 28, 2004; (b) Singer acknowledges that Unibilt is no longer a going concern, is in the process of winding up its affairs and will not be operating as an active business or enterprise; (c) any shareholder claims or actions Singer may have in his capacity as shareholder shall be brought only in the courts of the State of Michigan; and (d) Michigan law shall govern any shareholder claims or actions he may bring in his capacity as shareholder ....
(Emphasis added). The Settlement Agreement also contained the following forum selection clause:
12. The Court of the Ninth Judicial Circuit, Orange County, Florida, shall retain jurisdiction to enforce and interpret the terms of this agreement. This agreement shall be governed by and construed under the laws of the State of Florida, and the parties agree that in any action for enforcement of this agreement, venue shall be proper in Orange County, Florida, except that the parties agree that all cases and controversies concerning Singers rights as a shareholder of Unibilt shall be governed exclusively by the laws of the State of Michigan and that jurisdiction and venue over any action concerning Unibilt shares (other than the right of Singer to receive the shares as provided in Paragraph 2 of this agreement) shall be exclusively in Michigan.
(Emphasis added).
There is no dispute that Singer received the shares of Unibilt as provided in Paragraph 2 of the Settlement Agreement. What he did not receive, according to him, was his proper share of proceeds from Unibilt's subsequent sale of certain real estate. In short, it was a letter, dated March 23, 2006, from Unibilts Vice-President, Roger Zlotoff, informing Singer of his share of the profits from the sale of a certain parcel of real property that caused Singer's concern. In pertinent part, the letter read:
1. The gross sales price of the Southmark Center was $22.5 million, net sale proceeds (per the closing statement) were $20,148,326.58. Funds actually received were $20,148,218.00 (the difference of $108.58 was due to small transaction fees).
2. Fees earned by Unibilt were $282,952.08. This amount was reduced by $149,904.90 as Unibilt had to pay funds borrowed from other entities. The net fee payable to Unibilt was $133,047.18. Your share (25%) was paid *320 to you via a check in the amount of $33,261.75.
Singer, obviously unhappy with the amount of his shareholder distribution, contends that his suit is properly filed in Orange County pursuant to the forum selection clause of the Settlement Agreement because he seeks to enforce and interpret the terms of that agreement. We disagree and hold that Count I raises a case or controversy concerning Singers rights as a shareholder of Unibilt and thus is governed by the express language of Paragraph 12 of the agreement. Because Paragraph 12 is a mandatory, not permissive, forum selection clause, Travel Express Investment Inc. v. AT & T Corp., 14 So.3d 1224 (Fla. 5th DCA 2009), we find that the trial court correctly determined that the present dispute between Singer and Unibilt was required, pursuant to the unambiguous terms of the forum selection clause, to be litigated in the state of Michigan. Thus, the trial court's dismissal of Count I on this basis was correct.

Count IIBreach of Partnership Agreement
Singers cause of action in Count II against the other three appellees also arises out of the aforementioned March 23, 2006, letter. Paragraph 4 of this letter states:
4. Regarding distributions to limited partners of Williamsburg Developers, the attached schedules show that net funds available for distribution of $17,850,000 were not sufficient to repay partner loans and interest. Thus there were no distributions to any limited partners of Williamsburg Developers.
Singer alleged in Count II that this paragraph evidences a breach of the Partnership Agreement. The trial court never reached the merits of this claim, finding instead that an absence of in personam jurisdiction over Williamsburg Developers, Biltmore, and Zlotoff precluded its consideration of the issue.
There are two types of personal jurisdiction over non-residents under Florida's long-arm jurisdictional statute codified at section 48.193, Florida Statutes (2007): specific personal jurisdiction in subsection (1) and general personal jurisdiction in subsection (2). While Judge Roche, in her order dismissing Count II, concluded that the appellees were not conducting substantial business activity within Florida at the time suit was filed and had insufficient contacts to justify general in personam jurisdiction under subsection (2), we will address whether long-arm jurisdiction was appropriate under either subsection.
In order to determine whether personal jurisdiction of a non-resident defendant in Florida is proper, the trial court must examine the specific factual allegations set forth in the complaint to determine: (1) whether the facts set forth one or more of the predicate acts enumerated in section 48.193, Florida Statutes; and, if so, (2) whether the facts set forth the defendants minimum contacts with Florida necessary to satisfy federal constitutional due process requirements. Aspsoft, Inc. v. WebClay, 983 So.2d 761, 765 (Fla. 5th DCA 2008); Cohn v. Woolin, 971 So.2d 868, 871 (Fla. 3d DCA 2007). Sections 48.193(1)(a), (1)(c), and (1)(g), Florida Statutes, the arguably applicable subsections in this case, read, in relevant part, as follows:
48.193 Acts subjecting person to jurisdiction of courts of state.
(1) Any person, whether or not a citizen or a resident of this state, who personally or through an agent, does any of the acts enumerated in this subsection thereby submits himself or herself and, *321 if he or she is natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from doing any of the following acts:
(a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
. . . .
(c) Owning, using, possessing or holding a mortgage or other lien on any real property within this state.
. . . .
(g) Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.
The initial complaint was filed on June 5, 2007. The sale of the real property, which generated proceeds Singer believes were not sufficiently distributed, occurred on March 3, 2006. While section 48.193(1)(a) allows specific personal jurisdiction over a non-resident defendant who is operating, engaging or carrying on a business or a business venture in this state or having an office or agency in this state, the record before the trial court clearly supported that none of the Michigan appellees were currently operating, conducting, engaging in, or carrying on business in Florida when suit was filed. Because the long-arm statute must be strictly construed, Bank of Wessington v. Winters Government Securities Corp., 361 So.2d 757, 759 (Fla. 4th DCA 1978), there is no basis for specific personal jurisdiction under section 48.193(1)(a). Likewise, even if any or all of these Michigan entities previously owned or held various mortgages or liens on real property in Florida, they clearly did not when suit was filed. No basis existed for specific personal jurisdiction under section 48.193(1)(c).
Singer also claimed that the court had specific personal jurisdiction over the appellees under section 48.193(1)(g) for breaching a contract in this state by failing to perform acts required by the contract to be performed in this state. As best we can determine, Singer contends that the appellees failure to pay to him, in the state of Florida, the partnership distribution to which he believes he is entitled provides sufficient minimum contacts to confer long-arm jurisdiction over these appellees. We respectfully disagree. Nothing in the Partnership Agreement specifically directed that the partners or the partnership had a duty to pay the payments in the state of Florida. Put differently, the failure to pay the partnership distribution to Singer in Florida, under the facts and circumstances of this case, without more, is not a failure to perform an obligation required under the Partnership Agreement to be performed in Florida. Christus St. Joseph's Health Sys. v. Witt Biomedical Corp., 805 So.2d 1050, 1053-54 (Fla. 5th DCA 2002). Otherwise, where Singer resided at any given time and the alleged failure to receive partnership distribution payment in his then state of residency would lead the Michigan appellees to be subject to long-arm jurisdiction of that state.
Section 48.193(2), Florida Statutes, is the general jurisdictional statute. It reads:
(2) A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of the state, whether or not the claim arises from that activity.
An assertion of general jurisdiction under section 48.193(2) requires a showing of continuous and systematic general business contacts with this state. Tr. *322 of Columbia Univ. v. Ocean World, S.A., 12 So.3d 788, 792 (Fla. 4th DCA 2009); Snyder v. McLeod, 971 So.2d 166, 170 (Fla. 5th DCA 2007); Carib-USA Ship Lines Bah., Ltd. v. Dorsett, 935 So.2d 1272, 1275 (Fla. 4th DCA 2006). The continuous and systematic business contacts sufficient to confer general jurisdiction under section 48.193(2) present a much higher threshold than those contacts necessary to support specific jurisdiction under section 48.193(1). Seabra v. Int'l Specialty Imports, Inc., 869 So.2d 732, 734 (Fla. 4th DCA 2004).
In its order, the trial court concluded that there was insufficient evidence that the appellees named in Count II were conducting business in Florida when suit was filed and it appeared from the record that [they] had stopped doing business in the state in March, 2006 when the real property described was sold, some fifteen (15) months before suit was filed. We agree with the trial court that, under the facts presented in this record, these three Michigan entities, Williamsburg Developers, Biltmore, and Zlotoff, did not have the requisite continuous and systematic general business contacts with the state of Florida at the time suit was filed to meet the threshold necessary for in personam jurisdiction pursuant to section 48.193(2).[4] Accordingly, dismissal of Count II was also correct.
AFFIRMED.
MONACO, C.J., concurs.
TORPY, J., concurs in part, dissents in part, with opinion.
TORPY, J., concurring in part; dissenting in part.
I agree that the venue provision in the settlement agreement controls on Count I. In substance, this count seeks to enforce the plaintiff's rights as a shareholder and nothing more. Thus, the trial court was correct in dismissing Unibilt, the only defendant named in Count I. I also agree with the specific jurisdiction analysis of the majority on Count II, which alleges a breach of the partnership agreement against Williamsburg Developers, Biltmore, and Zlotoff ("the Williamsburg defendants"). However, I do think that there is a basis for general jurisdiction on Count II, pursuant to section 48.193(2), Florida Statutes (2007). This provision authorizes suits against nonresidents who engage in substantial activity in Florida, irrespective of whether the claim arises from the activity. Gadea v. Star Cruises, Ltd., 949 So.2d 1143, 1145 (Fla. 3d DCA 2007). The trial court determined that this section is not applicable because the Williamsburg defendants had ceased all activity in Florida by the time they were sued. In making its determination, the trial court relied upon Buckingham, Doolittle & Burroughs, LLP v. Kar Kare Automotive Group, Inc., 987 So.2d 818 (Fla. 4th DCA 2008).
In that case, Buckingham, Doolittle & Burroughs, LLP ("BDB"), a law firm, had represented Kar Kare Automotive Group, Inc. ("Kar Kare"), in a lawsuit in Florida against a former Kar Kare employee who had allegedly violated a non-compete agreement. After it lost the lawsuit, BDB sued Kar Kare in Florida to collect its fees. Curiously, BDB apparently did not assert specific jurisdiction under section 48.193(1)(g), Florida Statutes. The appellate opinion, therefore, addressed only the assertion of general jurisdiction under section 48.193(2), which provides: "A defendant *323 who is engaged in substantial and not isolated activity within the state, . . . is subject to the jurisdiction of the courts of this state whether or not the claim arises from that activity." Because Kar Kare had ceased doing business in Florida before the lawsuit was filed, the court held that general jurisdiction was lacking. Although it did not say so expressly, the Buckingham panel apparently adopted the same reasoning used in Arch Aluminum & Glass Co. v. Haney, 964 So.2d 228 (Fla. 4th DCA 2007). There, another panel of the same court concluded that "is engaged in substantial . . . activity," means "currently" engaged. Id. at 237. It based this conclusion on the use of the present tense phrase, "is engaged." I would not construe the statute this narrowly.
Section 48.193(2) is the "functional equivalent" of the constitutional "continuous and systematic" standard for general jurisdiction. Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino, 447 F.3d 1357, 1363 n. 7 (11th Cir.2006); Woods v. Nova Cos. Belize Ltd., 739 So.2d 617, 620 (Fla. 4th DCA 1999). The application of this standard necessarily involves the scrutiny of the activities of the nonresident over some period of time prior to the filing of the complaint. The duration of this period is not subject to specific delineation. See Woods, 739 So.2d at 620-21 (contacts assessed over period of years prior to filing complaint); Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560 (2d Cir. 1996) (contacts viewed for reasonable time prior to filing complaint). It depends upon such factors as the nature and intensity of the activity. The ultimate consideration is whether the nonresident's contacts are sufficient so that the exercise of jurisdiction comports with traditional notions of fairness. Helicopteros Nacionales de Colom., S.A. v. Hall, 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).
Turning to the specific language of section 48.193(2), the phrase "is engaged" could mean is engaged "at the time suit [is] filed," as our sister court construed it in Buckingham, 987 So.2d at 822. The problem with this interpretation is that it focuses on a temporal event that has no relevance to the constitutional standard with which it is said to be equivalent. See Woods, 739 So.2d at 620 (statutory "substantial activity" means same as constitutional "continuous and systematic" activity). For the activity to be "substantial" it must involve a wider temporal window. Thus, at a minimum, "is engaged" must be interpreted to also involve past activities. In my view, a better interpretation focuses on the activities of the nonresident during a reasonable period of time prior to filing the complaint, but not necessarily up until the complaint is filed. When the activities of the nonresident are of sufficient quality that it should in fairness expect to defend itself here, it should not make a difference that it happens to cease these activities prior to the filing of the complaint, especially where the activities occur close in time to the events giving rise to the cause of action.
Here, the partnership was established for the express purpose of developing a residential subdivision in Orange County, Florida. It conducted these activities for two decades in Florida with the plaintiff as its resident partner. Virtually all of its business activities took place in Florida. It had a registered agent in the state until shortly before suit was filed and had engaged in considerable litigation in the courts of this state. The alleged breach of contract, although technically not arising from these activities, occurred contemporaneously with the Williamsburg defendants' liquidation and exodus from Florida and involved a contractual relationship with the partnership's resident agent. Under these circumstances, I would hold *324 that there exists both statutory and constitutional authority to require the Williamsburg defendants to defend themselves in Florida.
NOTES
[1] 48.193(2), Fla. Stat. (2007).
[2] Williamsburg Commercial Limited Partnership was a party in the original Complaint but was not included in the Amended Complaint. Williamsburg Developers is the general partner of Williamsburg Commercial.
[3] Singer appealed this order to this court, to which the appellees objected because this was a non-final order. This court relinquished jurisdiction to allow the trial court to issue a final order dismissing this case, which is now the subject of the present appeal.
[4] The appellees also assert that the trial courts final order should be affirmed based upon the internal affairs or the forum non conveniens doctrine. Because the trial court did not address either argument below when entering its final order, we decline to do so.