**AUTONATION, INC., Plaintiff,**

v.

**Ronnie WHITLOCK, Defendant.**

**No. 03–61235–CIV.**

United States District Court,
S.D. Florida.

Aug. 1, 2003.

Jon K. Stage, Eric K. Gabrielle, Akerman Senterfitt, Fort Lauderdale, FL, for Plaintiff.

Allen M. Levine, Becker & Poliakoff, Fort Lauderdale, FL, for Defendant.

## *OMNIBUS ORDER*

ZLOCH, Chief Judge.

THIS MATTER is before the Court upon the Defendant, Ronnie Whitlock's Motion to Dismiss for Lack of Personal Jurisdiction (DE 9), Motion to Dismiss, or, Alternatively, to Transfer Venue of this Action based upon the Application of the "First–Filed" Rule (DE 10), and Motion to Continue Hearing of Plaintiff's Motion for Preliminary Injunction until the Court has Determined if it has Personal Jurisdiction over the Defendant (DE 11). The Court has carefully reviewed said Motions, the entire court file and is otherwise fully advised in the premises. An evidentiary hearing was held before the Court on July 15, 2003.[1]

### I. *Background*

Plaintiff, AutoNation, Inc. (hereinafter "AutoNation") commenced the above-styled cause by filing a three count Complaint (DE 1) against the Defendant, Ronnie Whitlock (hereinafter "Whitlock") seeking injunctive relief and damages. Specifically, Count I alleges that Whitlock breached a Restrictive Covenants and Confidentiality Agreement (DE 1, Ex. A) in violation of Florida Statutes § 542.335. Count II alleges that Whitlock breached various stock option agreements (DE 1, Ex. B). Count III alleges that Whitlock misappropriated and/or used trade secrets in violation of the Florida Uniform Trade Secrets Act, Florida Statutes §§ 688.001, *et seq.* Federal subject matter jurisdiction is proper based upon diversity of citizen-

---

1. On June 25, 2003, AutoNation filed a Motion for Preliminary Injunction (DE 2) and Request for Hearing on Motion for Preliminary Injunction (DE 3). The Court set AutoNation's Motion for Preliminary Injunction for an evidentiary hearing on July 15, 2003.

Prior to the hearing the parties were advised to present evidence and testimony on the issue of personal jurisdiction, which they did. As discussed below, the Court limited the hearing and its rulings to the issue of personal jurisdiction.

ship. *See* 28 U.S.C. § 1332 (2003). The alleged grounds for exercising personal jurisdiction over Whitlock are Florida Statutes § 48.193(1)(a), (g) and (2), and the Fourteenth Amendment to the United States Constitution.

Whitlock is a citizen and resident of Texas. (DE 1, Compl. ¶ 4.) AutoNation is a Delaware corporation with its principle place of business in Fort Lauderdale, Florida. (*Id.* at ¶ 3.) In January 1998, AutoNation purchased Orange Park Toyota in Duval County, Florida. (*Id.* at ¶ 20.) At that time, Whitlock, who had been living in Florida and employed at Orange Park Toyota since 1992, became general manager of the dealership for AutoNation. (*Id.*; Whitlock Decl. ¶ 10.) In July of 1998, AutoNation transferred Whitlock to Chuck Clancy Ford (hereinafter "Team Ford") in Marietta, Georgia. (*Id.* at ¶ 21; Whitlock Decl. ¶ 10.) From July 1998 until June 2003, Whitlock resided in Suwanee, Georgia and worked as the general manager at Team Ford in Marietta, Georgia. (Whitlock Decl. ¶ 3.) On June 14, 2003, Whitlock resigned from Team Ford and relocated to Arlington, Texas, where he is currently employed by Vandergriff Automotive II, LP, d/b/a Vandergriff Toyota. (Grese Decl. ¶¶ 4–6; Whitlock Decl. ¶¶ 14 & 16.)

Between July 1998 and June 2003 Whitlock personally attended six AutoNation Dealer Meetings in Florida on the following dates: (1) May 20–22, 1998; (2) December 15–16, 1998; (3) May 23–25, 1999; (4) January 22–24, 2001; (5) January 12–15, 2002; and (6) January 18–21, 2003. (Ring Decl. ¶ 7; Whitlock Decl. ¶ 15.) During the five years Whitlock worked at Team Ford in Gergia, AutoNation kept in continual contact with Whitlock by providing him with information and direction regarding his work as general manager of Team Ford. For example, AutoNation investigated approximately forty-two customer complaints concerning Team Ford between August 1998 and May 2003. (Cancinos Decl. ¶ 6.) AutoNation's headquarters in Florida would forward these complaints to Whitlock in Georgia via electronic mail and Whitlock would be required to send AutoNation's headquarters a written response. (*Id.* at ¶ 5.) Whitlock testified that he did not directly receive these electronic mailings, but stated in his Declaration that he spoke by telephone with AutoNation's Florida headquarters four or five times a year regarding customer complaints. (Whitlock Decl. ¶ 14.)

Additionally, between January 1999 and June 2003 AutoNation sent approximately eight hundred General Field Bulletins[2] from its Florida headquarters to its district offices, and then to its general managers, including Whitlock, at their individual dealerships. (Ring Decl. ¶ 5.) Whitlock testified, however, that he hardly read any of the General Field Bulletins. AutoNation also sent other business information, including books, posters, and notices, directly to its general managers, including Whitlock, approximately four times per year. (Ring Decl. ¶ 6.)

AutoNation also disseminated business information, systems, and policies developed in its Florida headquarters to its various general managers, including Whitlock. Donna Parlapiano, AutoNation's Vice President of District Operations, testified that AutoNation's business systems and polices are developed in Fort Lauderdale, Florida and then sent to the individual dealerships where the general managers execute the systems and policies. Whitlock acknowledges that he was provided with certain business information, such as

---

**2.** General Field Bulletins are information distribution mechanisms where information or requests for information are sent from Auto-

Nation's Florida headquarters to its individual dealerships. (Ring Decl. ¶ 5.)

Peer Performance Reports and Monthly Operating Review Sheets, but states that these reports were provided by the Southeastern District Office in Atlanta, Georgia. (Whitlock Decl. ¶ 13.)

On February 12, 1998, April 1, 1999, May 11, 1999, and September 5, 2000 Whitlock signed stock option agreements with AutoNation. The April 1999, May 1999, and September 2000 agreements all contain a forum selection clause in which each party (i.e., AutoNation and Whitlock) waived any objection to jurisdiction in a state or federal court located in Broward County, Florida in any action arising out of the stock option agreements. (DE 1, Ex. B.) On September 10, 2002, Whitlock signed the Restrictive Covenants and Confidentiality Agreement which likewise contains a forum selection clause wherein the parties waived any objections to jurisdiction in a state or federal court located in Broward County, Florida. (DE 1, Ex. A.)

Whitlock, however, states in his Declaration that during the relevant time period, that is between July 1998 and June 2003, that: (1) he has not operated a business or maintained an office or employee in Florida; (2) he has not owned or leased any real property in Florida since June 1998; (3) he has no personal or tangible property or bank accounts in Florida; (4) he has not entered into any contract that calls for the performance of an act in Florida; (5) he was never employed by AutoNation; and (6) that AutoNation's management of its dealerships is decentralized and that he dealt regularly with AutoNation's Southeastern District Office in Atlanta, Georgia. (Whitlock Decl. ¶¶ 4–12.)

## II. *Discussion*

### A. *Motion to Dismiss for Lack of Personal Jurisdiction*

■ A federal district court sitting in diversity must employ a two-part analysis to determine whether it has personal jurisdiction over a nonresident defendant. *See*

*Posner v. Essex Ins. Co.,* 178 F.3d 1209, 1214 (11th Cir.1999); *Madara v. Hall,* 916 F.2d 1510, 1514 (11th Cir.1990). First, the district court must consider the jurisdictional question under the state long-arm statute. *Madara,* 916 F.2d at 1514. "If there is a basis for the assertion of personal jurisdiction under the state statute, [the Court must] next determine whether sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment so that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id.* (*quoting International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). "Only if both prongs of the analysis are satisfied may a federal or state court exercise personal jurisdiction over a nonresident defendant." *Id.*

### 1. *Florida Long–Arm Jurisdiction*

■ Section 48.193(2), Florida Statutes (2003) provides that:

> A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

Florida courts have found "substantial and not isolated activity" to mean "continuous and systematic general business contact" with Florida. *Woods v. Nova Cos. Belize Ltd.,* 739 So.2d 617, 620 (Fla. 4th DCA 1999). This "continuous and systematic" contacts requirement is sufficient to fulfill the constitutional due process requirements of minimum contacts. *Id.* Therefore, if Whitlock's activities meet the requirements of section 48.193(2), the minimum contacts prong of the jurisdictional analysis is also satisfied and this Court may exercise personal jurisdiction over Whitlock. *Id.*

■ Here, the record in the above-styled cause establishes that Whitlock engaged in the necessary continuous and systematic business activities with Florida to satisfy § 48.193(2). In 1998 Whitlock worked for six months at AutoNation's Orange Park Toyota, in Duval County, Florida. In July of 1998, AutoNation transferred Whitlock to Team Ford in Marietta, Georgia. Between July 1998 and June 2003, Whitlock personally attended six AutoNation Dealer Meetings in Florida on the following dates: (1) May 20–22, 1998; (2) December 15–16, 1998; (3) May 23–25, 1999; (4) January 22–24, 2001; (5) January 12–15, 2002; and (6) January 18–21, 2003. In addition to attendance at these Dealer Meetings, the record establishes that during the relevant time period Whitlock had ongoing business contacts with AutoNation in Florida regarding his work, including: (1) communications regarding customer complaints; (2) the transmission of business information in the form of General Field Bulletins, books, posters, and notices, and Peer Performance Reports and Monthly Operating Review Sheets; and (3) the transmission of AutoNation's business systems and policies, which as general manager Whitlock was supposed to execute.

The Court finds these activities sufficient for this Court to exercise personal jurisdiction over Whitlock. *See Nordmark Presentations, Inc. v. Harman,* 557 So.2d 649, 651 (Fla. 2d DCA 1990) (finding personal jurisdiction over nonresident defendant based upon the defendant's attendance at three business meetings in Florida, as well as defendant's receipt of information and direction regarding defendant's work over two year period). In making this finding, the Court notes that it is Whitlock's activities considered collectively and over the five year period between 1998 and 2003, as opposed to any single activity alone, that establishes personal jurisdiction. *See Woods,* 739 So.2d at 621 (noting that a nonresident defendant's contacts with the forum state are assessed over a period of years leading up to the lawsuit, and that such contacts can be considered collectively).

### 2. *Forum Selection Clause*

■ Under Florida law—which is the minority view—"a contractual choice of forum clause designating Florida as the forum cannot serve as the *sole* basis for asserting in personam jurisdiction over an objecting, non-resident defendant." *McRae v. J.D./M.D., Inc.,* 511 So.2d 540, 544 (Fla.1987) (emphasis added). Such a clause may, however, be considered as a factor that weighs in favor of exercising personal jurisdiction over a nonresident defendant where other grounds exist to exercise such jurisdiction. *See Armaly v. Practice Mgmt. Assocs.,* 533 So.2d 920, 922 (Fla. 2d DCA 1988); *see also Desai Patel Sharma, Ltd v. Don Bell Indus., Inc.,* 729 So.2d 453, 454 (Fla. 5th DCA 1999) (holding that nonresident defendant's failure to make payments in Florida coupled with forum selection clause sufficient for court to exercise personal jurisdiction over nonresident defendant).

Here, in addition to the contacts described above which support exercising personal jurisdiction over Whitlock, the Court notes that the Restrictive Covenants and Confidentiality Agreement and stock option agreements at issue in this matter contain forum selection clauses in which Whitlock waived any objection to personal jurisdiction in Florida. The Restrictive Covenants and Confidentiality Agreement signed by Whitlock on September 10, 2002 provided that:

> each party waives any objection that such party may now or hereafter have to such venue or jurisdiction in any action, suit or proceeding brought in any State or federal court located in Broward County, Florida. [Whitlock] affirms

that he ... has sufficient contact with Florida such that [Whitlock] would reasonably anticipate being haled into said courts in Florida regarding this Agreement or any other contract or issues arising between the parties hereto.

(DE 1, Ex. A). The stock options agreements signed by Whitlock on May 11, 1999, April 1, 1999, and September 5, 2000 stated that:

The parties agree that any action, suit, or proceeding arising out of or relative to this Agreement ... shall be instituted only in the state or federal courts located in Broward County in the State of Florida, and each party waives any objection which such party may now or hereafter have to such venue or jurisdictional court in any action, suit or proceedings.

(DE 1, Ex. B).[3] At the July 15, 2003 evidentiary hearing the Court inquired of Whitlock as to whether he was forced to sign any of the documents at issue in the matter. Whitlock responded that he was not forced to sign any document at issue in this matter. Accordingly, the Court finds that the forum selection clauses at issue here are a factor that can be weighed in favor of exercising personal jurisdiction over Whitlock in this matter. *See Desai Patel Sharma, Ltd,* 729 So.2d at 454; *see also Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 n. 14, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (noting that personal jurisdiction is a waivable right and that a litigant may give express or implied consent to the personal jurisdiction of a court through a variety of legal arrangements (quotations and citations omitted)).

In conclusion, the Court finds that it may properly exercise personal jurisdiction over Whitlock pursuant to Florida Statutes § 48.193(2) and the Fourteenth Amendment to the United States Constitution.

**B.** *Motion to Dismiss or Transfer based upon "First–Filed" Rule*

 On June 16, 2003, eight days before AutoNation filed the above-styled cause, Whitlock filed a declaratory relief action in Texas state court seeking to have the Restrictive Covenants and Confidentiality Agreement at issue here declared unenforceable. AutoNation removed the case to the United States District Court for the Northern District of Texas and filed a motion to dismiss based upon improper venue. According to the "first-filed" rule, when two parallel suits are proceeding in different courts, the court initially having jurisdiction should hear the case in order to conserve judicial resources and avoid conflicting rulings. *Supreme Int'l Corp. v. Anheuser–Busch, Inc.,* 972 F.Supp. 604, 606 (S.D.Fla.1997). Here, application of the first-filed rule would appear to mandate that the above-styled cause be dismissed or transferred to the Northern District of Texas. On July 29, 2003, however, the United States District Court for the Northern District of Texas dismissed Whitlock's declaratory judgment action. Therefore, the issue of whether the first-filed rule should be applied in this case is now moot.

**C.** *Motion to Continue Hearing*

Finally, the Court notes that Whitlock's motion to continue the hearing on AutoNation's motion for preliminary injunction is also moot because the Court has determined that it has personal jurisdiction over Whitlock and has not reached the merits of AutoNation's request for a preliminary injunction.

---

**3.** The language of the September 5, 2000 stock option agreement varies slightly, but is in substance the same.

### III. *Conclusion*

In conclusion, the Court finds that it has personal jurisdiction over Whitlock, that the issue of the applicability of the "first-filed" rule has been mooted by the decision of the Northern District of Texas dismissing Whitlock's Texas action, and that Whitlock's motion to continue the hearing on AutoNation's preliminary injunction is likewise moot.

Accordingly, after due consideration, it is

**ORDERED AND ADJUDGED** as follows:

1. The Defendant, Ronnie Whitlock's Motion to Dismiss for Lack of Personal Jurisdiction (DE 9) be and the same is hereby **DENIED**;

2. The Defendant, Ronnie Whitlock's Motion to Dismiss, or, Alternatively, to Transfer Venue of this Action based upon the Application of the "First–Filed" Rule (DE 10) be and the same is hereby **DENIED** as moot; and

3. The Defendant, Ronnie Whitlock's Motion to Continue Hearing of Plaintiff's Motion for Preliminary Injunction until the Court has Determined if it has Personal Jurisdiction over the Defendant (DE 11) be and the same is hereby **DENIED** as moot.