915 So.2d 1236 (2005)
Garrick HATFIELD, Appellant,
v.
AUTONATION, INC., Appellee.
No. 4D05-2129.
District Court of Appeal of Florida, Fourth District.
December 21, 2005.
*1238 Alex J. Sabo and Seth V. Alhadeff of Bressler, Amery & Ross, P.C., Miramar, for appellant.
Jon K. Stage and Eric K. Gabrielle of Stearns, Weaver, Miller, Weissler, Alhadeff & Sitterson, P.A., Fort Lauderdale, for appellee.
GERBER, JONATHAN D., Associate Judge.
Appellant, Garrick Hatfield, appeals from an order denying his motion to dismiss for lack of personal jurisdiction in response to an action filed by appellee, AutoNation, Inc. We affirm.
AutoNation owns and operates more than 250 vehicle dealerships in 18 states. In 2002, Hatfield, a Texas citizen, became the general manager of one of AutoNation's Mercedes Benz dealerships in Houston. The following year, Hatfield signed a "Confidentiality, No-Solicitation/No Hire and Non-Compete Agreement," wherein he agreed, for one year after his employment terminated, not to become employed with a competitor anywhere within a fifty-mile radius of the dealership at which he was employed or within a ten-mile radius of any new or used vehicle dealership which AutoNation owned or operated any where in the United States. The agreement provided that it was governed by Florida law and that:
[A]ny action, suit or proceeding arising out of or relative to this Agreement or the relationship of Employee and Company shall be instituted only in the state or federal courts located in Broward County, in the state of Florida, and each party waives any objection which such party may now or hereafter have to such venue or jurisdictional court in any action, suit, or proceeding.
AutoNation sued Hatfield in Broward County, alleging that Hatfield resigned from his employment at the Mercedes Benz dealership in January 2005 to accept immediate employment with a soon-to-open competing Mercedes Benz dealership in League City, Texas. AutoNation sought injunctive relief and damages under various counts. AutoNation claimed that Hatfield was subject to personal jurisdiction in Florida because Hatfield maintained regular and systematic contacts in Florida by traveling to Florida to participate in AutoNation's three-day retail leadership meetings in Fort Lauderdale in 2003, 2004, and 2005. AutoNation also contended that Hatfield had "regular and frequent interaction" with its Fort Lauderdale headquarters by requesting and receiving information and business-related assistance, direction, supervision and support to aid him in operating his dealership. AutoNation further alleged that Hatfield committed tortious acts in Florida by misappropriating and converting AutoNation's trade secrets and other confidential proprietary business information and by coming to AutoNation's 2005 leadership meeting in Florida under false pretenses to obtain information while knowing that he did not intend to remain an AutoNation general manager. Moreover, AutoNation pled that Hatfield contractually agreed to venue in Broward County.
Hatfield moved to dismiss the action for lack of personal jurisdiction and failure to state a cause of action. Hatfield alleged that the trial court did not have personal jurisdiction over him under Florida's long-arm statute, that minimum contacts did not exist between himself and Florida, and that AutoNation failed to state a cause of action alleging he had committed any tortious *1239 acts. Hatfield attached to his motion to dismiss a sworn declaration stating that he is a citizen and resident of Texas; he has lived in Texas continuously since 1986; he has never lived in Florida; he has never worked in Florida; he has never owned, and does not own, any real property in Florida; he does not maintain any bank accounts in Florida; he has not entered into any contracts in Florida; and he does not regularly transact, and has not transacted, any business in Florida.
Responding to AutoNation's allegations, Hatfield's sworn declaration also stated that he signed the "Confidentiality, No-Solicitation/No-Hire and Non-Compete Agreement" on the understanding that, if he did not sign the agreement, then he would lose his job. Hatfield stated that he was given, and signed, the agreement in Texas. Hatfield contended that he has never been to AutoNation's offices or headquarters in Florida. Hatfield stated that he attended a limited number of business meetings in Florida, but only because he was required to do so as part of his job. Hatfield recalled that he has been to Florida only three times, in January 2003, 2004 and 2005, to attend company meetings at a Fort Lauderdale hotel, and that, during the last trip, he was in Florida less than 48 hours. Hatfield alleged that AutoNation maintained a very stringent attendance policy at the meetings and, at the time of the 2005 meeting, he had been ill and was advised not to travel, but attended due to AutoNation's attendance policy. Hatfield stated that, at the 2005 meeting, he was given a binder, but he did not take or copy the binder. Hatfield claimed that, since leaving AutoNation, he has been unemployed, he has not had any employment agreement with another dealership, and he does not work for the other Mercedes Benz dealership mentioned in AutoNation's amended complaint.
AutoNation filed an emergency motion for temporary injunction, and shortly thereafter filed an emergency motion to require specific performance of the contractual venue selection and to enjoin misuse of AutoNation's confidential proprietary and trade secret information. AutoNation set its specific performance motion for hearing before the trial court, and Hatfield cross-noticed his motion to dismiss for the same hearing.
The day before the hearing, AutoNation served five affidavits in opposition to Hatfield's Declaration. Gary Cancinos, an AutoNation eSupport Analyst and former AutoNation customer service specialist, stated in his affidavit that, when Hatfield was the general manager of the Houston dealership, there were multiple written communications, including electronic communications, between the customer service department and Hatfield. Cancinos further alleged that the customer service department, from AutoNation's Fort Lauderdale headquarters, provided Hatfield continuous customer relations support including service, sales transactions, and finance. Cancinos added that the signature block on Hatfield's e-mails to his online customers provided a Fort Lauderdale address for contacting Hatfield by mail. Marc Cannon, AutoNation's Vice President of Corporate Communications, explained in his affidavit that he routinely sent from AutoNation's Fort Lauderdale headquarters general field bulletins and other information mechanisms, and that, when Hatfield attended the annual leadership meetings in Fort Lauderdale, Hatfield was given confidential and proprietary business information including future business targets, objectives and strategies. Brian Fritz, AutoNation's Director of IT Systems, indicated in his affidavit that he ran a computer search to determine when Hatfield accessed AutoNation's computer system from June 1, 2004 through April *1240 28, 2005, and generated a computer usage log detailing everything Hatfield used on AutoNation's computer system. Ron McCrea Gordon, Lead Systems Architect in AutoNation's IT Technical Services Department, stated in his affidavit that AutoNation's Florida-based website is available only to its associates and contains information that is highly sensitive, proprietary, and confidential, including advertising strategies, stock and production plans, and marketing tools. Gordon alleged that he reviewed the log data of Hatfield's last two months of usage of the Florida-based website, and Hatfield had used the website almost daily, accessing the various proprietary programs for varying lengths of time on over 150 occasions. Mike Strong, an account executive for one of AutoNation's outside advertising agencies in Fort Lauderdale, indicated in his affidavit that he held weekly conference calls with the Houston dealership to plan and implement its advertising, and Hatfield usually participated in the calls. Strong added that he and Hatfield also regularly communicated with each other via e-mail. A few hours before the hearing, AutoNation served the affidavit of Ricardo Puerto, a Systems Engineer in AutoNation's IT Technical Services Department, who stated that he had restored approximately the last two months of Hatfield's e-mails, and that, on January 26, 2005 (five days before Hatfield's resignation from AutoNation became effective), Hatfield had forwarded to Julie Anderson, a non-AutoNation employee, five e-mails which contained proprietary attachments, including new loaner programs, a finance and insurance director pay plan, a Mercedes Benz departmental pace report, a Mercedes Benz advisor pay template, and the 2004 tracking consolidation which also included the 2003 sales performance. Puerto stated that all of the e-mails in AutoNation's e-mail system are routed through a server located in Fort Lauderdale regardless of the computer's physical location.
At the hearing, Hatfield's counsel requested that the trial court postpone the hearing to allow Hatfield time to respond to AutoNation's affidavits. The trial court denied the request and proceeded to hear argument and evidence relating to the motion. In addition to the arguments already raised in his motion and declaration, Hatfield's counsel contended that AutoNation presented no affidavit to controvert Hatfield's allegations that, when he resigned from his employment, he did not take or copy the binder he received at the January 2005 meeting, or that, since resigning from his employment, Hatfield remained unemployed. Hatfield neither testified nor appeared in person at the hearing. In response, and in addition to the arguments already raised in their motion and affidavits, AutoNation had Puerto testify in person. On cross examination, Puerto conceded that, although he retrieved the five January 26th e-mails which Hatfield sent to Anderson, he (Puerto) did not have personal knowledge as to the proprietary nature of the documents attached to the e-mails. AutoNation stipulated that Puerto did not have personal knowledge of the nature of the documents. Therefore, AutoNation presented as a witness its Vice President of Regional Operations and Manufacture Relations, Donna Parlapiano, who testified as to the documents' proprietary nature.
The trial court denied Hatfield's motion to dismiss. The trial court held that AutoNation presented sufficient allegations of jurisdictional facts to comply with Florida's long-arm statute, and that Hatfield's declaration did not refute the allegations that he committed tortious acts within Florida. The trial court further held there had been sufficient evidence that Hatfield had minimum contacts necessary to meet *1241 the requirements of the long-arm statute such that Hatfield anticipated being haled into court in Florida, and that the material which Hatfield allegedly stole from AutoNation was proprietary and confidential. This appeal followed.
This court reviews a trial court's denial of a motion to dismiss for lack of personal jurisdiction de novo. See Banco Inversion, S.A. v. Celtic Fin. Corp., S.A., 907 So.2d 704, 707 (Fla. 4th DCA 2005). Applying the two-step inquiry recognized in Venetian Salami Co. v. Parthenais, 554 So.2d 499, 502 (Fla.1989), we conclude that the trial court did not err in finding Florida had personal jurisdiction over Hatfield. Pursuant to Venetian Salami, the court must determine whether the complaint pleads jurisdictional facts in order to sufficiently "bring the action within the ambit of the [long-arm] statute," section 48.193, Florida Statutes. Id. If so, the court then must engage in the second step of the analysis and determine whether there exists minimum contacts between Florida and the non-resident or, essentially, whether the non-resident "should reasonably anticipate being haled into [Florida] court." Id. at 500 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)).
Initially, the plaintiff may seek to obtain jurisdiction over a nonresident defendant by pleading the basis for service in the language of the statute without pleading the supporting facts. See Venetian Salami, 554 So.2d at 502. By itself, the filing of a motion to dismiss on grounds of lack of jurisdiction over the person does nothing more than raise the legal sufficiency of the pleadings. See id. A defendant wishing to contest the allegations of the complaint concerning jurisdiction or to raise a contention of minimum contacts must file an affidavit in support of the defendant's position. See id. The burden then is placed upon the plaintiff to prove by affidavit the basis upon which jurisdiction may be obtained. See id. In most cases, the court can harmonize the affidavits, and the court will be in a position to make a decision based upon facts which essentially are undisputed. See id. at 502-03. When the court cannot harmonize the affidavits, the court will have to hold a limited evidentiary hearing to determine the jurisdiction issue. See id. at 503.
AutoNation alleged that Hatfield was subject to Florida's long-arm jurisdiction on the grounds that (1) Hatfield maintained regular and systematic contacts in Florida by traveling to Florida to participate in AutoNation's three-day retail leadership meetings and by requesting and receiving from AutoNation's Fort Lauderdale headquarters information and business-related assistance, direction, supervision and support to aid him in operating his dealership, (2) Hatfield committed tortious acts in Florida by misappropriating and converting AutoNation's trade secrets and other confidential proprietary business information, and by coming to AutoNation's 2005 leadership meeting in Florida under false pretenses to obtain information while knowing that he did not intend to remain an AutoNation general manager, and (3) Hatfield contractually agreed to venue in Broward County. Facially, AutoNation's allegations appear to have satisfied the requirements of Florida's long-arm statute, and the trial court's decision to that effect appears correct.
However, in its order denying Hatfield's motion to dismiss, the trial court held that Hatfield's declaration did not "refute the allegations that [Hatfield] committed tortious acts within the State of Florida." This finding appears to be inaccurate when comparing AutoNation's *1242 amended complaint to Hatfield's declaration. AutoNation alleged that Hatfield committed tortious acts in Florida by misappropriating and converting AutoNation's trade secrets and other confidential proprietary business information, and by coming to AutoNation's 2005 leadership meeting in Florida under false pretenses to obtain information while knowing that he did not intend to remain an AutoNation general manager. In response, Hatfield alleged that, at the 2005 meeting, he was given a binder, but he did not take or copy the binder. Hatfield also claimed that, since leaving AutoNation, he has been unemployed, he has not had any employment agreement with another dealership, and he does not work for the other Mercedes Benz dealership mentioned in AutoNation's amended complaint. Although the declaration is not as detailed as the amended complaint, it appears that the trial court erred in concluding that the declaration did not refute the allegations that Hatfield committed tortious acts within the State of Florida. As a result, it is unclear whether the trial court attempted to harmonize Hatfield's declaration with AutoNation's affidavits in response.
However, these errors were harmless, because the trial court proceeded to conduct a limited evidentiary hearing on the jurisdictional issue, for which the trial court had at its disposal Hatfield's declaration, AutoNation's affidavits, and the testimony of Puerto and Parlapiano. It appears that AutoNation's evidence was sufficient to sustain its jurisdictional allegations in the face of Hatfield's declaration. AutoNation's evidence supports the view that Hatfield engaged in substantial and not isolated activity in Florida by regularly communicating with AutoNation's Florida-based customer service department to obtain customer relations support, by regularly accessing AutoNation's Florida-based computer system to obtain information on AutoNation's business strategies, plans, and tools, by participating in weekly conference calls and e-mails with AutoNation's Florida-based advertising agency to plan and implement his dealership's advertising, and by attending the annual leadership meetings in Fort Lauderdale. AutoNation also proffered sufficient evidence to withstand a motion to dismiss on the issue of whether Hatfield committed a tortious act in Florida by using AutoNation's Florida-based e-mail system to forward five e-mails containing alleged proprietary and confidential attachments to a non-AutoNation employee just five days before his resignation became effective, and by attending the January 2005 leadership meeting allegedly to obtain information while knowing that he did not intend to remain an AutoNation general manager. Although this Court has held that simply communicating or transferring documents to or within Florida with respect to transactions in another state does not impose jurisdiction per se, Harris v. Shuttleworth and Ingersoll, P.C., 831 So.2d 706, 708 (Fla. 4th DCA 2002), this case appears to involve more than simply communicating or transferring documents.
While a close question, the trial court did not err in finding that Hatfield had the requisite minimum contacts with Florida to satisfy due process considerations. In analyzing whether a non-resident has the requisite minimum contacts with a forum state to justify personal jurisdiction, courts should determine whether the non-resident's "conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp., 444 U.S. at 297, 100 S.Ct. 559. In determining whether a non-resident satisfies the minimum contacts test, courts should consider such factors as the *1243 course of dealing between the parties and the contractual obligations of the parties. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 479, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). If the defendant's activities meet the requirements of section 48.193(2), minimum contacts also are satisfied. Woods v. Nova Cos. Belize, Ltd., 739 So.2d 617, 620 (Fla. 4th DCA 1999). "Substantial and not isolated activity," as used in section 48.193(2), has been found to mean "continuous and systematic general business contact" with Florida. Id. Although a forum selection clause, designating Florida as the forum, cannot operate as the sole basis for Florida to exercise personal jurisdiction over an objecting non-resident defendant, McRae v. J.D./M.D., Inc., 511 So.2d 540, 542 (Fla.1987), such a clause may be considered as a factor that weighs in favor of exercising personal jurisdiction over a nonresident defendant where other grounds exist to exercise such jurisdiction. See Global Satellite Commc'n Co. v. Sudline, 849 So.2d 466, 469 (Fla. 4th DCA 2003) ("when jurisdiction is based on the breach of a contract in Florida coupled with a Florida venue selection clause, the defendant has given implied consent to personal jurisdiction in the forum State and has, in essence, conceded minimum contacts").
As stated above, Hatfield appears to have been engaged in continuous and systematic general business contact with Florida, and the underlying contract contains a clause selecting Florida as the forum to resolve any action arising out of the relationship between Hatfield and AutoNation. Thus, Hatfield's conduct and connection with Florida are such that he should reasonably have anticipated being haled into court in Florida for this suit.
The factors present here appear very similar to two cases in which other courts have found that an out-of-state agent had minimum contacts with Florida sufficient to support personal jurisdiction. In Nordmark Presentations, Inc. v. Harman, 557 So.2d 649 (Fla. 2d DCA 1990), an events promotion company known as Events International hired Harman to arrange events throughout the United States. The parties' contract provided that, if the contract terminated, Harman, for three years, would not conduct any promotions in metropolitan areas where he previously had conducted promotions for Events. At the time of his hire, Harman resided in Iowa. After Harman completed a training seminar in Ohio, Events assigned Harman briefly to Alabama, and then to Michigan, where he resided and performed his duties for three years before he terminated the contract. According to the unrefuted allegations of the complaint, Events' Sarasota office provided Harman with proprietary information, trade secrets, managerial training and assistance, and regularly directed and supervised Harman's day-to-day activities. In addition, Events assisted Harman in carrying out his assigned duties, in solving problems, and in providing technical and practical assistance and support. While working for Events, Harman attended three business meetings in Florida, each of which lasted no more than one-and-a-half days. Harman did not engage in any other activities in Florida, nor was he required to under the contract. Harman maintained his own office and staff in Michigan at his own expense and was not permitted to use Events' office equipment, personnel or supplies.
After Harman terminated the contract, Events learned that Harman was promoting events for the company's previous clients. Events brought an action against Harman in Sarasota County, seeking injunctive relief and damages for unfair competition, improper utilization of trade secrets, and breach of the parties' agreement. *1244 Harman moved to dismiss the complaint for lack of personal jurisdiction, which the trial court granted. The Second District reversed, finding that the complaint's allegations, if true, would be sufficient to satisfy Florida's long-arm statute and due process considerations. The court reasoned:
[T]he alleged continuing obligations and contact between Harman and Events, including Harman's attendance at two of Events' annual meetings in Florida, Harman's attendance at one business meeting with Events in Florida, the assignment of work to Harman by Events, the transmission of information from Events to Harman and Events' frequent, specific and direct supervision of Harman's work over a two-year period, were sufficient to show that Harman had sufficient minimum contacts with the State of Florida.
Nordmark, 557 So.2d at 651. Because the trial court entered its dismissal before the Supreme Court issued its decision in Venetian Salami, the Second District remanded the case for further limited evidentiary hearings to determine the jurisdiction issue consistent with Venetian Salami.
In AutoNation, Inc. v. Whitlock, 276 F.Supp.2d 1258 (S.D.Fla.2003), the Southern District, citing Nordmark, held that it had personal jurisdiction over a defendant under very similar facts. AutoNation had commenced an action against Whitlock, one of its former general managers, seeking injunctive relief and damages for Whitlock's alleged breach of his restrictive covenant and confidentiality agreement and his alleged misappropriation and/or use of trade secrets in violation of the Florida Uniform Trade Secrets Act. AutoNation had employed Whitlock at a Florida dealership for six months in 1998 before transferring him to a Georgia dealership, where he worked until 2003, when he resigned from AutoNation to take a job with a non-AutoNation dealership in Texas.
In denying Whitlock's motion to dismiss for lack of personal jurisdiction, the court found that Whitlock had engaged in the necessary continuous and systematic business activities with Florida to satisfy section 48.193(2). The court commented that, while Whitlock worked in Georgia between 1998 and 2003, he personally attended six AutoNation dealer meetings in Florida which occurred almost annually. The record also established that, during the same time period, Whitlock had ongoing business contacts with AutoNation in Florida regarding his work, including (1) communications regarding customer complaints, (2) the transmission of business information in the form of general field bulletins, books, posters, notices, peer performance reports, and monthly operating review sheets, and (3) the transmission of AutoNation's business systems and policies, which Whitlock was supposed to execute. The court found those activities sufficient for the court to exercise personal jurisdiction over Whitlock. In making that finding, the court noted that it was Whitlock's activities considered collectively and over the five-year period between 1998 and 2003, as opposed to any single activity alone, that established personal jurisdiction. In addition to the contacts described above, the court observed that the restrictive covenants and confidentiality agreement at issue in the case contained a forum selection clause in which Whitlock waived any objection to personal jurisdiction in Florida.
The facts here are very similar to those in Nordmark and Whitlock. The record in this case establishes that Hatfield personally attended three of AutoNation's annual meetings in Florida, and had ongoing business contacts with AutoNation in Florida regarding his work. Like Whitlock, Hatfield's "Confidentiality, No-Solicitation/No *1245 Hire and Non-Compete Agreement" contains a forum selection clause in which Hatfield waived any objection to personal jurisdiction in Florida. The only significant difference between this case and Whitlock is that Hatfield never has worked for AutoNation in Florida, while Whitlock worked for AutoNation in Florida for six months. However, the majority of the Whitlock decision focused on Whitlock's activities while he worked in Georgia and made no mention of any activities while he worked in Florida. Moreover, comparing this case to Nordmark, the employee there never lived nor worked in Florida, and there was no mention of any forum selection clause. The Second District still found that the complaint's allegations, if true, supported personal jurisdiction.
In sum, based on the record, the trial court correctly denied Hatfield's motion to dismiss for lack of personal jurisdiction. Therefore, we affirm.
Affirmed.
KLEIN and SHAHOOD, JJ., concur.