Eloy Rojas MAMANI, et al., Plaintiffs,

v.

Gonzalo Daniel Sanchez de Lozada
Sanchez BUSTAMANTE,
Defendant.

Civil Action No. AW–07–2507.

United States District Court,
D. Maryland,
Southern Division.

April 15, 2008.

Tobias Eli Zimmerman, John L. Van Sickle, Steven H. Schulman, Akin Gump Strauss Hauer and Feld LLP, Washington, DC, David Rudovsky, Kairys Rudovsky Messing and Feinberg LLP, Philadelphia, PA, James L. Cavallaro, Tyler Richard Giannini, International Human Rights Clinic, Harvard Law School, Cambridge, MA, Jeremy F. Bollinger, Michael C. Small, Akin Gump Strauss Hauer and Feld LLP, Los Angeles, CA, Judith

Brown Chomsky, Law Office of Judith Brown Chomsky, Elkins Park, PA, for Plaintiffs.

Howard W. Gutman, Ana Cecilia Reyes, Gregory B. Craig, Williams and Connolly LLP, Washington, DC, for Defendant.

### *MEMORANDUM OPINION*

ALEXANDER WILLIAMS, JR., District Judge.

Plaintiffs Eloy Rojas Mamani, Etelvina Ramos Mamani, Sonia Espejo Villalobos, Hernan Apaza Cutipa, Jaun Patricio Quispe Mamani, Teofilo Baltazar Cerro, Juana Valencia De Carvajal, Hermogenes Bernabe Callizaya, Gonzalo Mamani Aguilar, and Felicidad Rosa Huanca Quispe (collectively "Plaintiffs" [1]) bring this action against the ex-President of the Republic of Bolivia, Gonzalo Daniel Sanchez De Lozada Sanchez Bustamante ("Defendant" or "Defendant Sanchez de Lozada"), seeking compensatory and punitive damages against Defendant for his role in the massacre of Bolivian civilians. Currently pending before the Court is Defendant's Motion to Transfer Venue to the Southern District of Florida (Doc. No. 24). The Court has reviewed the entire record with respect to the instant motion. The Court held a hearing on this motion on April 7, 2008. *See* Local Rule 105.6 (D. Md. 2008).[2] The issues having been fully briefed and argued by the parties, this matter is now ripe for review. For the reasons set forth below, the Court will GRANT Defendant's Motion to Transfer.

### FACTUAL AND PROCEDURAL BACKGROUND

Defendant Sanchez de Lozada was the democratically elected President of Bolivia from 1993 to 1997, and was re-elected to a second term that began in August 2002 and ended in October 2003. During his second term, opponents of the governing party began protesting the government's policies, specifically the economic programs. As a result of the protesting, violence began to brew in February 2003. In their complaint, Plaintiffs allege that Defendant used military force to silence opposition and intimidate the civilian population by killing demonstrators.[3]

The protests continued to grow in strength, which resulted in more violence. In September 2003, thousands of rural villagers, unions, and community groups began widespread protests and strikes to oppose government policies. On September 19, 2003, the head of the Bolivian Police declared a state of emergency in Bolivia. The protesting, attacks, and violence continued throughout the months of September and October, and many were killed or wounded, including protestors, bystanders, and police and military.[4] On October 17, 2003, Defendant Sanchez de Lozada resigned as the President of the Republic of Bolivia, and, within hours of

---

1. Plaintiffs, all natives and citizens of Bolivia, bring this action in their individual capacities and on behalf of their immediate family members who were allegedly killed by the Bolivian Armed Forces or persons or groups acting in coordination with the Armed Forces or under their control.

2. Hereinafter "Motions Hearing."

3. Plaintiffs allege that the government security forces were responsible for at least 38 deaths and 182 injuries in the first two months of 2003.

4. Plaintiffs allege that there were 67 deaths and over 400 injuries during September and October 2003. However, the details of the specific events that occurred in Bolivia in September and October 2003 are not accounted here because they are not essential to the Court's ruling on Defendant's Motion to Transfer.

his resignation, departed Bolivia and flew to Miami, Florida.

On September 19, 2007, Plaintiffs filed suit against Defendant Sanchez de Lozada, asserting three claims for relief: (1) Extrajudicial Killing, pursuant to the Torture Victim Protection Act; (2) Crimes Against Humanity, pursuant to the Alien Tort Statute; and (3) violation of the Rights to life, liberty and security of person and freedom of assembly and association, pursuant to the Alien Tort Statute. On that same day, Plaintiffs also filed a virtually identical action (hereinafter the "Florida action") in the United States District Court for the Southern District of Florida against Jose Carlos Sanchez Berzain, who served as Minister of Defense during Defendant Sanchez de Lozada's presidency in Bolivia, seeking to collect tort damages for the very same events that took place in Bolivia.[5]

Defendant moves to transfer this action to the Southern District of Florida for the purpose of consolidating this action with the case filed in that district by the same plaintiffs and involving common issues of fact and law pertaining to both Defendants.

## STANDARD OF REVIEW

■ Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (2008). The purpose of § 1404(a) is "to prevent the waste of time, energy, and money" and "to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964); *see also Lynch v. Vanderhoef Builders*, 237 F.Supp.2d 615, 617 (D.Md.2002) (same). In a motion to transfer pursuant to § 1404(a), "the burden is on the moving party to show that transfer to another forum is proper." *Lynch*, 237 F.Supp.2d at 617.

■ The standards for transfer under § 1404 are: "(1) the transferee court must be a court in which the action could have been brought initially; (2) the transfer must be convenient to the parties and witnesses; and (3) the transfer must be in the interest of justice." *Dow v. Jones*, 232 F.Supp.2d 491, 499 (D.Md.2002). In deciding a motion to transfer venue under § 1404(a), the court must "weigh in the balance a number of case-specific factors." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988). Courts are to consider the following factors: (1) the weight accorded to plaintiff's choice of forum; (2) witness convenience and access; (3) convenience of the parties; and (4) the interests of justice. *Cross v. Fleet Reserve Ass'n Pension Plan*, 383 F.Supp.2d 852, 856 (D.Md.2005). However, unless the balance of factors "is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Collins v. Straight Inc.*, 748 F.2d 916, 921 (4th Cir.1984). The decision whether to transfer venue is committed to the sound discretion of the trial court. *See Brock v. Entre Computer Centers, Inc.*, 933 F.2d 1253, 1257 (4th Cir.1991).

---

**5.** As the Defendant noted during the Motions hearing, the only difference between the two suits is that the defendant in the Florida action was allegedly on-site during some of the killings. Plaintiffs also state in their opposition brief that the defendant in the Florida action "personally directed the Bolivian military's actions when he was present at several of the actual sites of the murders in question, while the Defendant (Bolivia's former President) appears not to have been present when these killings of civilians occurred."

## DISCUSSION

The parties dispute whether this action could have initially been brought in the Southern District of Florida. Therefore, the Court must first decide this threshold jurisdictional issue before weighing the convenience factors.

### I. Jurisdiction in the Southern District of Florida

 Pursuant to Florida Statute § 48.193(2),[6] Florida can exercise general personal jurisdiction over a defendant "who is engaged in substantial and not isolated activity" within Florida. As both parties note, Florida's statute is equivalent to the "systematic and continuous" contacts required for the exercise of general jurisdiction consistent with the Due Process clause of the federal constitution. *See Am. Overseas Marine Corp. v. Patterson*, 632 So.2d 1124, 1128 (Fla. 1st DCA 1994) ("The Florida courts have harmonized the language of section 48.193(2) with the constitutional due process requirements ... by holding that substantial and not isolated activity means 'continuous and systematic general business contacts.' "); *see also Travel Opportunities of Fort Lauderdale, Inc. v. Walter Karl List Mgmt., Inc.*, 726 So.2d 313, 314 (Fla. 4th DCA 1998) (same). Under the Due Process clause, in analyzing whether a non-resident has the requisite minimum contacts with a state to justify personal jurisdiction, courts should determine whether the non-resident's "conduct and connection with the forum State are such that he should reasonably anticipate being haled

into court there." *Hatfield v. AutoNation, Inc.*, 915 So.2d 1236, 1242 (Fla. 4th DCA 2005) (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). In determining whether Defendant has substantial contacts with Florida, Florida courts have also assessed the "collective effect of the defendant's activities" over "a period of years prior to the plaintiff's filing of the complaint." *Dean v. Johns*, 789 So.2d 1072, 1077–78 (Fla.Dist.Ct.App. 2001).

Defendant argues that Florida could have properly exercised personal jurisdiction over him, pursuant to Florida's long-arm statute, where he maintains his primary personal checking account in Florida,[7] has contracted with investment advisors in Florida to manage his personal investments, has retained several attorneys in Florida to handle his affairs and has had Florida attorneys under active retainer since 2003, has conducted media interviews in Miami, and has made a number of visits, for a multitude of reasons, to Florida.[8] Defendant also contends that, from 1999 until 2002, he was a member of the Leadership Council for Inter–American Summitry, which was a part of the North–South Center of the University of Miami. Moreover, from November 2005 to November 2007, Defendant claims to have contracted with a personal investment manager physically located in Miami who managed Defendant's accounts. Defendant also expressly authorized one of his Florida attorneys to

---

**6.** Fla. Stat. § 48.193(2) provides: "A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity."

**7.** The record reflects that Defendant Sanchez de Lozada has maintained his Florida bank account since December 12, 2003.

**8.** Defendant maintains that over the course of at least 23 trips, he spent at least 89 days in Florida.

serve as his agent for service of process with regard to his immigration matters.[9]

Plaintiffs, on the other hand, argue that these contacts are not "systematic and continuous" and amount to "no more than that of a typical tourist to the Sunshine State,"[10] where Defendant maintains no residence in Florida, derives no income in Florida, and transacts no business in Florida. It appears to the Court that Plaintiffs have isolated each of Defendant Sanchez de Lozada's contacts in an attempt to prove that each isolated activity is insufficient to support the assertion of personal jurisdiction over Defendant in Florida. Indeed, the Court recognizes that any one of these contacts, standing alone, may not be deemed sufficient; however, the Court believes that such contacts, when considered collectively, are sufficient to establish personal jurisdiction.[11] *See AutoNation,*

9. Defendant also consents to jurisdiction in Florida. As Plaintiffs correctly note, the Supreme Court held that a transfer under § 1404(a) does not "depend upon the wish or waiver [or consent] of the defendant but, rather, upon whether the transferee district was one in which the action 'might have been brought by the plaintiff.' " *Hoffman v. Blaski,* 363 U.S. 335, 343–44, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960). The Supreme Court, however, noted that "[i]f when a suit is commenced, plaintiff has a right to sue in that district, independently of the wishes of defendant, it is a district 'where the action might have been brought.' " *Id.* at 344, 80 S.Ct. 1084. Thus, this Court must determine whether this action could have originally been brought in the Southern District of Florida, independently of Defendant's consent.

10. While Plaintiffs liken Defendant's contacts with Florida to those of a typical "tourist to the Sunshine State," the Court does not believe that the collective contacts described by Defendants, and supported by the record, can be accurately relegated to those of a mere tourist.

11. To the extent that the Court evaluates each of Defendant's contacts separately, the Court must note that the cases relied upon by Plaintiffs to support their contention that certain isolated contacts are insufficient to establish jurisdiction are distinguishable. For example, with respect to Defendant's visits to Florida, Plaintiffs cite *Dunlop v. Dunlop,* 564 So.2d 618 (Fla.Dist.Ct.App.1990) to support the proposition that occasional visits did not give rise even to limited personal jurisdiction. That case, involving the modification of child support, is inapposite to this instant action, as that court found that "[a]lthough the husband had minimum contact with Florida, the statutory criteria was not met as he neither maintained a matrimonial domicile nor resided in this state before or at the time the wife commenced this action." *Dunlop,* 564 So.2d at 619. This Court has found that the statutory criteria of section 48.193(2), as well as the constitutional principles, have been met. Plaintiffs also cite *Kulko v. Superior Court,* 436 U.S. 84, 93, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978), in which the Supreme Court held that jurisdiction premised on 3–day and 1–day stopovers "would make a mockery of" due process limitations on the assertion of personal jurisdiction. Unlike the defendant in *Kulko,* Defendant Sanchez de Lozada's visits constituted more than mere stopovers in Florida. In fact, the record suggests that Defendant made at least 23 trips to Florida and spent at least 89 days in the state.

Plaintiffs also argue that Defendant's purchases of legal and investment advisory services from business with offices in Miami are insignificant. To support this argument, Plaintiffs cite *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 417, 104 S.Ct. 1868, 80 L.Ed.2d 404 (U.S.1984), where that court noted that "purchases and related trips, standing alone, are not a sufficient basis for a State's assertion of jurisdiction." In that case, Helicol's chief executive officer made one trip to Houston for the purpose of negotiating the transportation-services contract, and the court held that the one trip and purchase cannot be regarded as contact of a "continuous and systematic" nature. In this instant action, Defendant made more than one trip or even one purchase. Not only does the evidence support that Defendant made several trips to Florida, on different occasions, but the record also demonstrates that Defendant has had Florida attorneys under active retainer since 2003, and he has expended at least $266,000 in legal fees in Florida. Defendant has also contracted with invest-

*Inc. v. Whitlock*, 276 F.Supp.2d 1258, 1263 (S.D.Fla.2003) ("In making this finding, the Court notes that it is [the defendant]'s activities considered collectively and over the five year period between 1998 and 2003, as opposed to any single activity alone, that establishes personal jurisdiction."); *see also Woods v. Nova Cos. Belize Ltd.*, 739 So.2d 617, 621 (Fla. 4th DCA 1999) ("While any one of [the defendant's] activities alone may not be deemed sufficient, considered collectively, they establish personal jurisdiction.").

■ Therefore, considering Defendant's activities in Florida collectively over a period of years prior to the filing of the complaint, the Court finds that evidence supports the view that Defendant engaged in substantial and not isolated activity in Florida. Moreover, the Court finds that Defendant purposefully availed himself of Florida's privileges and protections by: (1) maintaining his primary checking account in Florida (which is accessed 25 to 30 times per month); (2) contracting with investment advisors in Florida to manage his personal investments; (3) retaining several Florida attorneys to handle his affairs, including authorizing a Florida attorney to accept service of process with regards to immigration matters; (4) joining and being recognized by a membership organization in Florida; and (5) making many visits to Florida, during which, among other things, he sought legal advice, banking and investment services, and conducted media interviews. *See Georgia Insurers Insolvency Pool v. Brewer*, 602 So.2d 1264, 1268 (Fla. 1992) ("Factors that go into determining whether sufficient minimum contacts exist include the foreseeability that the defendant's conduct will result in suit in the forum state and the defendant's purposeful availment of the forum's privileges and protections."). The Court finds that these contacts are such that Defendant should have reasonably anticipated being haled into court in Florida, *see World–Wide Volkswagen Corp.*, 444 U.S. at 297, 100 S.Ct. 559, and the maintenance of this action in Florida does not offend traditional notions of fair play and substantial justice. *See International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).[12] Accordingly, the Court finds that Defendant could have initially been sued in the Southern District of Florida.[13]

---

ment advisors in Florida to manage his personal investments.

With respect to Defendant's bank account in Florida, Plaintiffs cite *La Reunion Francaise v. La Costena*, 818 So.2d 657, 659 (Fla. 3rd DCA 2002), for the proposition that maintaining a bank account is not sufficient to establish personal jurisdiction. In that case, the defendant's sole contact with Florida was the maintenance of a Florida bank account. Here, Defendant's primary bank account in Florida is just one of the several contacts Defendant has maintained with Florida. While the Court notes that "the bank account[ ] alone is insufficient to sustain a finding of personal jurisdiction, [it is] one indication of minimum contacts." *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1363 n. 5 (11th Cir. 2006).

**12.** While the Court has independently found that the due process requirements of minimum contacts have been satisfied, the Court must also note that Florida courts have held that the minimum contacts requirement is satisfied if Defendant's activities meet the requirements of section 48.192(2). *See Woods v. Nova Cos. Belize Ltd.*, 739 So.2d 617, 620 (Fla. 4th DCA 1999) ("Because section 48.193(2) requires this high threshold, if the defendant's activities meet the requirements of section 48.193(2), minimum contacts is also satisfied."); *see also Hatfield v. AutoNation, Inc.*, 915 So.2d 1236, 1242–43 (Fla. 4th DCA 2005) (same).

**13.** During the Motions Hearing, counsel for Plaintiffs continually stated that there is no reason for this Court to create new law on general jurisdiction. This Court must note

## II. Weighing the Convenience Factors

■ Finding that the Southern District of Florida has personal jurisdiction over Defendant, the Court must now consider the following factors in determining whether a transfer would be appropriate: [14] (1) the weight accorded to plaintiff's choice of forum; (2) witness convenience and access; (3) convenience of the parties; and (4) the interests of justice. *Cross,* 383 F.Supp.2d at 856.

### A. Plaintiffs' Choice of Forum

■ Although a plaintiff's choice of forum is generally "entitled to substantial weight," *Bd. of Trs., Sheet Metal Workers National Fund v. Baylor Heating & Air Conditioning, Inc.,* 702 F.Supp. 1253, 1256 (E.D.Va.1988), a court need not accord the choice as much weight when the "forum has no connection with the matter in controversy." *Dicken v. U.S.,* 862 F.Supp. 91, 93 (D.Md.1994) (quoting *Mims v. Proctor & Gamble Distrib. Co.,* 257 F.Supp. 648, 657 (D.S.C.1966)); *see also Lynch v. Vanderhoef Builders,* 237 F.Supp.2d 615, 617 (D.Md.2002) (noting that the weight accorded to plaintiff's forum choice is "significantly lessened when none of the conduct complained of occurred in the forum selected by the plaintiff and said forum has no connection with the matter in controversy"). Moreover, "[w]hen the [plaintiff's] home forum has been chosen, it is reasonable to assume that this choice is convenient. When the plaintiff is foreign, however, this assumption is much less reasonable." *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255–56, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981).

■ Here, Defendant argues—and the record reflects—that all of the events giving rise to this controversy took place in Bolivia; Defendant was the ex-President of Bolivia; Plaintiffs reside in Bolivia; and the only link between this case and Maryland is that Defendant currently resides in Maryland. Under these circumstances, the Court concludes that Plaintiff's choice of forum is significantly lessened, and it is much less reasonable to assume that Plaintiffs' choice of this Court is the most convenient forum.

### B. Witness Convenience and Access

The convenience of the witnesses is "perhaps the most important factor" in determining whether a transfer of venue should be granted. *Cronos Containers Ltd. v. Amazon Lines, Ltd.,* 121 F.Supp.2d 461, 466 (D.Md.2000).

Defendant argues that the witnesses would substantially benefit from consolidating the instant case with Minister Berzain's case currently before the Southern District of Florida.[15] Defendant maintains

---

that its ruling is not only in line with the well-established law of general jurisdiction and rulings of Florida courts on this issue, but it is also consistent with the spirit and intent of "systematic and continuous" contacts required for the exercise of general jurisdiction under the Due Process clause.

**14.** During the Motions Hearing, the Court noted that many of the convenience factors weighed in favor of a transfer, specifically conserving judicial resources and avoiding duplicative litigation of virtually identical cases. The Court informed the parties that, based on those factors, it will likely transfer this action if the Court found that the Southern District of Florida could exercise personal jurisdiction over Defendant.

**15.** Defendant claims that Plaintiffs' Complaints against Defendants in both this action and the Florida action hint at having the same witnesses, all of whom live in Bolivia. Both Complaints lists the following people: Alejandro Apaza Huallpa, Father Modesto Chino Mamani, then-Vice President Carlos Mesa. It is obvious from the pleadings that most of the evidence and witnesses are to be found in Bolivia.

that a majority of Plaintiffs' and Defendant's witnesses live in Bolivia and, therefore, the witnesses would potentially have to travel from Bolivia to both Maryland and Florida to participate in discovery and trial twice.

■ Defendant correctly notes that the Florida action will proceed regardless of the outcome of this motion. While the Court is not persuaded by Defendant's contention that there are direct international flights to Florida and not to the Maryland area, the Court does recognize that transferring this case to the Southern District of Florida—which will likely involve the same Bolivian witnesses—will save the witnesses time, energy, and money. A transfer will also protect the witnesses from unnecessary inconvenience and expense, as the witnesses will have to travel to both states for discovery and trial, if the matter proceeds to the trial stage. *See Fox v. Callender*, 729 F.Supp. 32, 34 (D.Md.1990). Considering that the convenience of the witnesses is the most important factor, the Court agrees that this factor militates persuasively in favor of transfer and consolidation in one court.

### C. Convenience of the Parties

■ It appears to the Court that a transfer would likely be convenient for both parties and would not prejudice either party. Plaintiffs argue that Defendant cannot claim that the Southern District of Florida is a more convenient forum for him because Defendant resides in this district in Maryland. Although Defendant resides in Maryland, the Court notes that "the only connection that this case has with Maryland is the residence of Defendants, who, by their own motion, show a preference in having this action tried [elsewhere]." *Fox*, 729 F.Supp. at 34. The Court also notes that Plaintiffs, residents of Bolivia, will have to travel to both Flori-

da and Maryland to litigate, including conducting discovery, in two separate actions that involved virtually identical facts and issues. Considering the circumstances, the Court finds that the convenience of the parties factor also militates persuasively in favor of transfer.

### D. The Interests of Justice

■ A significant factor in considering the interests of justice is "avoiding duplicative litigation in courts," and the Court "may appropriately consider the 'conservation of judicial resources and comprehensive disposition of litigation.'" *Cronos Containers*, 121 F.Supp.2d at 466.

■ The Court recognizes that the pending Florida action presents the same issues as are involved in this case. Plaintiffs filed the virtually identical action in the Southern District of Florida the exact same day as they filed suit in this Court. Plaintiffs are represented by the same attorneys in both actions, and Defendant Sanchez de Lozada in this action and Minister Berzain in the Florida action are represented by the same law firm. Additionally, the Court recognizes that this case turns on questions and defenses of federal and international law, not Maryland law. *See Sheet Metal Workers*, 702 F.Supp. at 1260 (noting that courts must consider their "familiarity with the applicable law.").

Plaintiffs, acknowledging that these two cases can be coordinated—or even consolidated, suggest that this Court and the Court in the Southern District of Florida can readily prevent duplicative discovery through the entry of appropriate discovery orders in each case. Plaintiffs contend that such coordination would likely include a joint discovery plan, the cross-filing of deposition notices and document requests, and an order directing that discovery developed in one case can be used in the

other. While Plaintiffs' suggestion is not wholly unfounded, the Court does not think it would be reasonable to have such coordination, especially considering that this matter can be appropriately transferred to the Southern District of Florida. The Court does not believe that keeping this case in this Court is in the interest of justice, when it would inevitably lead to duplicative litigation—and potentially inconsistent rulings—and would do nothing to conserve judicial resources. By having substantially similar actions in both Courts, as Defendant points out, it is at least arguable that Plaintiffs are attempting to "take two bites at the apple." Thus, the Court finds that a transfer will serve the interests of justice.

## CONCLUSION

Finding that this action could have originally been brought in the Southern District of Florida, the Court finds no compelling reason against transferring this action, where this action and the virtually identical Florida action involve the same Plaintiffs, who filed both actions on the same day, seeking to recover the same damages in both actions for the same events occurring in Bolivia. Moreover, the parties in both actions are represented by the same attorneys, and both cases involve the same counts, with the exception of a few additional counts brought against the defendant in the Florida action. Therefore, there appearing to be no compelling reasons against transferring this action and it appearing that a transfer will serve the interests of justice and will be of convenience to the parties and witnesses, the Court will hereby transfer this action to the Southern District of Florida. An Order consistent with this Opinion will follow.

## ORDER

For the reasons stated in the accompanying Memorandum Opinion, IT IS this *15th day of April, 2008,* by the United States District Court for the District of Maryland, hereby **ORDERED:**

a. That Defendant's Motion to Transfer Venue to the Southern District of Florida (Doc. No. 24) BE, and the same hereby IS, **GRANTED;**

b. That this action BE, and the same hereby IS, **TRANSFERRED** to United States District Court for the Southern District of Florida;

c. That the Clerk of the Court **CLOSE** this case; AND

d. That the Clerk of the Court transmit a copy of this Memorandum Opinion and Order to all counsel and parties of record.